**ANDREYKO, Appellant,**

v.

**CITY OF CINCINNATI and Board of Trustees of the
Cincinnati Retirement System, Appellees.**

[Cite as *Andreyko v. Cincinnati,* 153 Ohio App.3d 108, 2003-Ohio-2759.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020606.

Decided May 30, 2003.

Katz, Teller, Brant & Hild and James F. McCarthy III, for appellant.

Julia L. McNeil, Cincinnati Solicitor, and Frank H. Prouty II, Assistant City Solicitor, for appellees.

GORMAN, Judge.

{¶ 1} Plaintiff-appellant, John Andreyko, appeals from the trial court's judgment entered in favor of defendants-appellees, the city of Cincinnati and the board of trustees of the Cincinnati Retirement System ("CRS")[1], on Andreyko's claims that the creation of two classes of nonuniformed employees seeking prior service credit—one purchasing credits at a subsidized cost and the other bearing the full cost—violated his constitutional right to the equal protection of the laws. See Section 1983, Title 42, U.S.Code. Andreyko argues that there was no rational

---

1. R.C. 2721.12 requires a party challenging the constitutionality of a municipal ordinance to serve a copy of the complaint on the Attorney General so as to give him an opportunity to be heard. See *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities*, 150 Ohio App.3d 383, 2002-Ohio-6344, 781 N.E.2d 1034, at ¶ 39. Pursuant to R.C. 2721.12(A), Andreyko served a copy of the complaint on the Attorney General, who has neither entered an appearance nor moved for leave to intervene.

basis for discriminating against public employees who were not participants in the state's Police–and–Fire Pension Fund by imposing additional costs on them for the purchase of service credits. We agree and hold that the stipulated evidence does not justify distinguishing between the two groups and that no grounds can be conceived to justify a distinction. The trial court's judgment must be reversed.

## FACTS

{¶ 2} In the mid–1960s, Andreyko worked for the city of Youngstown, Ohio, for two-and-one-half years before beginning his employment with the city of Cincinnati. Because Youngstown did not have a separate retirement system, Andreyko participated in the Ohio Public Employees Retirement System ("OPERS"). He accepted a new job with Cincinnati and began working without interruption. Andreyko withdrew the contributions that he had made to PERS and, as he was required to do, joined CRS. There was then no provision for receiving credit in CRS for time earned in PERS. Andreyko worked for Cincinnati for 30 years. When he retired from city service, Andreyko was the Deputy Director of Finance.

{¶ 3} Ordinarily, employees receiving benefits from CRS are entitled to a pension in an amount based upon the employee's time in service. By purchasing credits for time during which the participant was employed in other public service but not eligible for membership in CRS, a participant may enhance his or her retirement benefits, including pension and medical benefits.

{¶ 4} Prior to 1997, only nonuniformed city employees with prior participation in the state Police and Firemen's Disability and Pension Fund ("PFF") were entitled to purchase prior service credit in CRS. Since 1983, in a measure adopted to "have a considerable effect upon the appointment" of Henry Sandman as Safety Director, CRS has subsidized the purchase of service credit for former PFF participants with uninterrupted public service. Instead of the required deposit of 50 percent of the amount necessary to fully fund that portion of his pension, a participant can purchase credit for the time he participated in the PFF at the reduced cost of the employee contribution plus 4 percent interest compounded annually on those contributions. See Cincinnati Municipal Code 203–7.

{¶ 5} This benefit was not available to current Cincinnati police and firefighters; only current nonuniformed employees with prior service in the PFF could purchase service credit. Employees who had participated in other public retirement systems before their employment with the city were not eligible to purchase the credit.

{¶ 6} In response to lobbying by Andreyko and others, CRS and the Cincinnati City Council enacted an ordinance in 1997 permitting employees who had participated in OPERS to purchase service credit in CRS. See Cincinnati Municipal Code 203–7A. CRS did not, however, extend the purchase of credits on the same favorable terms offered to former PFF participants. Prior OPERS participants, like Andreyko, would be allowed to purchase credits only in a manner that would be cost-neutral to CRS, or, as a CRS actuary had recommended to the city, that would "make the purchase considerably less attractive to participants." The extra costs required among other things that the participant pay an actuary to compute the costs of the credit before the participant was permitted to purchase credit. The participant would then pay 100 percent of the amount determined to fund his pension. The participant was obligated to pay both the employee's and the employer's contributions.[2] See id.

{¶ 7} The stipulated evidence in this case indicates that the cost to purchase two-and-one-half years of service credit for Andreyko was $59,339. The cost to a former PFF participant would have been $3,590. "Thus, any Cincinnati employee who had not participated in the police and fire pension fund, but had participated in another public retirement system such as [OPERS], would have to pay more to purchase the same credit and receive the enhanced retirement benefit." *Andreyko v. Cincinnati* (2001), 145 Ohio App.3d 365, 366, 763 N.E.2d 190 (*"Andreyko I"*).

{¶ 8} Andreyko filed this action against the city and CRS seeking a declaration that the city had created two classes of employees seeking prior service credit— one purchasing credits at a subsidized cost, and the other bearing the full cost— without justification for the cost differences. He sought to purchase credits for his Youngstown PERS contributions under the same favorable terms as those city employees who had previously contributed to the PFF. He also asked for attorney fees.

{¶ 9} Following a bench trial, the trial court entered judgment in Andreyko's favor. When the city and CRS appealed, this court determined that the trial court had erroneously applied a strict-scrutiny analysis to Cincinnati's classification scheme. See Id. at 368, 763 N.E.2d 190. The case was remanded to the trial court for application of the less stringent rational-basis test to the classification. See id. Upon remand to a new trial judge, the parties filed a jointly prepared, nine-page stipulation of facts. After reviewing the prior trial testimony and the joint stipulation, the new judge entered the judgment now appealed by Andreyko.

---

**2.** As the trial court noted, as of April 1, 2001, the prospective effective dates of R.C. 145.2910 and 145.2912, the General Assembly has provided for the transfer of service credit from OPERS to CRS at the cost of prior contributions plus accrued interest. See R.C. 145.2912(C).

## STANDARD OF REVIEW

■ {¶ 10} The briefs are silent concerning the standard of review to be applied to Andreyko's assignment of error. The trial court purportedly dismissed Andreyko's complaint for declaratory judgment without either party's moving for dismissal. As the trial court declared the rights of the parties in its six-page written decision, however, we construe its decision to have entered judgment on the merits in favor of the city and CRS. See R.C. 2721.03; see, also, *Fioresi v. State Farm Mut. Auto. Ins. Co.* (1985), 26 Ohio App.3d 203, 203–204, 26 OBR 424, 499 N.E.2d 5.

## DE NOVO REVIEW

■ {¶ 11} The interpretation of the constitutionality of a statute or municipal ordinance presents a question of law. See, e.g., *Klein v. Leis* (2002), 146 Ohio App.3d 526, 767 N.E.2d 286, appeal accepted for review, 96 Ohio St.3d 1488, 2002-Ohio-4478, 774 N.E.2d 763. Questions of law are reviewed de novo, independently, and without deference to the trial court's decision.[3] See *Ohio Bell Tel. Co. v. Pub. Util. Comm.* (1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286.

## THE RATIONAL–RELATION TEST

■ {¶ 12} The gravamen of Andreyko's single assignment of error is that the city and CRS violated his constitutional right to the equal protection of the law by their arbitrary and unjustified policy of requiring him to purchase service credits in the retirement system at terms far less favorable than the terms extended to another group of employees. See Section 1983, Title 42, U.S.Code; see, also, *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 34, 550 N.E.2d 456, citing *Parratt v. Taylor* (1981), 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420. Ohio courts may adjudicate declaratory-judgment claims based upon violations of Section 1983. See *Piphus v. Blum* (1995), 108 Ohio App.3d 218, 220, 670 N.E.2d 518; see, also, *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292–293, 595 N.E.2d 862.

---

**3.** Because the trial court reached a decision on the merits and did not foreclose relief due to the lack of a real, justiciable controversy, we are not persuaded that the abuse-of-discretion standard of review employed by several appellate courts is correct. See, e.g., *Huron Cty. Bd. of Commrs. v. Saunders,* 149 Ohio App.3d 67, 2002-Ohio-3974, 775 N.E.2d 892, at ¶ 21 (Sixth Appellate District), and *Hasman v. Genesis Outdoor, Inc.,* 11th Dist. No. 2002–G–2416, 2002-Ohio-923, 2003 WL 680175, at ¶ 9, citing *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 65 O.O.2d 179, 303 N.E.2d 871, syllabus (employing abuse-of-discretion standard where trial court determines that "a controversy is so contingent that declaratory relief does not lie* * *.").

{¶ 13} Where neither a fundamental constitutional right nor a suspect classification is at issue, a legislative distinction between two groups need only be created in such a manner as to bear a rational relationship to a legitimate governmental interest. See *Andreyko I,* 145 Ohio App.3d at 367–368, 763 N.E.2d 190; see, also, *State v. Williams* (2000), 88 Ohio St.3d 513, 530–531, 728 N.E.2d 342. A legislative decision to treat two groups differently is constitutionally infirm only where it is "based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." See *Clements v. Fashing* (1982), 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508; see, also, *Williams,* 88 Ohio St.3d at 530, 728 N.E.2d 342. In making this determination, a reviewing court must grant substantial deference to the economic judgment of the legislative entity. See, e.g., *Turner Broadcasting Sys. v. Fed. Communications Comm.* (1997), 520 U.S. 180, 195, 117 S.Ct. 1174, 137 L.Ed.2d 369.

{¶ 14} Under the rational-basis standard, the party challenging the legislative enactment bears the heavy burden of demonstrating that it is irrational. See *Harrah Indep. School Dist. v. Martin* (1979), 440 U.S. 194, 198, 99 S.Ct. 1062, 59 L.Ed.2d 248. The challenger must negative every conceivable basis before an equal protection challenge will be upheld. See *Heller v. Doe* (1993), 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257. One means of carrying this burden is by demonstrating that the legislative facts on which the classification is justified " 'could not reasonably be conceived to be true by the governmental decision maker.' " *Muller v. Lujan* (C.A.6, 1991), 928 F.2d 207, 210, quoting *Vance v. Bradley* (1979), 440 U.S. 93, 111, 99 S.Ct. 939, 59 L.Ed.2d 171 (former federal employee alleging wrongful denial of severance benefits under Federal Employees Salary Act); see, also, *Williams,* 88 Ohio St.3d at 531, 728 N.E.2d 342.

{¶ 15} Andreyko has met this substantial burden. CRS and the city council are under a fiduciary duty to maintain the financial integrity of the city retirement fund—a sound governmental goal. Maintaining a well-funded retirement system not only benefits current and former employees, but it also encourages the hiring of skilled and motivated employees. Indeed, the financial impact of permitting prior OPERS participants to purchase service credit in CRS was the primary concern driving the imposition of the additional costs. "In passing Cincinnati Municipal Code 203–7A, the [CRS] and City Council made [a] financial decision to preserve the financial integrity of the retirement system, while simultaneously permitting [the] purchase of service credit," appellees assert.

{¶ 16} The city and CRS cannot substantiate their position, however, as they have stipulated that the retirement system is not financially threatened by the purchase of service credit in connection with any state-sponsored retirement

system. Furthermore, Keith Giles, the current finance manager of the city's retirement office, testified that permitting former PERS participants to purchase service credit did not present any immediate or future financial threat to the retirement system. When asked whether the city and CRS had conducted any studies of the cost of service credits to the retirement system, Giles responded, "No." Giles also testified that the city had not obtained an opinion from the system actuary of the costs of prior service credits or determined how many current employees were eligible to purchase the new service credits, even though CRS is obligated by law to conduct actuarial investigations to evaluate the assets and liabilities of the system.

{¶ 17} Both groups of nonuniformed city employees purchasing service credits in the city's retirement scheme—former PFF participants and former OPERS participants—have earned time in state-sponsored retirement plans, with similar rules for participation, withdrawal of employee contributions, transfer of funds, and vesting. The only cost difference for employees with prior service in the two funds is the purchase formula devised by the city and CRS.

{¶ 18} Based on the stipulated record, Andreyko has demonstrated that there is no conceivable rational basis for the disparate classification. He has sustained the burden of demonstrating that the legislative decision at issue was not rationally related to a legitimate governmental interest. The assignment of error is sustained.

## ATTORNEY FEES

{¶ 19} On August 24, 2000, the trial court in *Andreyko I* granted Andreyko's application for attorney fees. Noting that a prevailing party in a Section 1983 action was entitled to fees, the court awarded Andreyko $31,068.70 in fees and costs. See Section 1988, Title 42, U.S.Code. The city brought its initial appeal only from the final judgment in favor of Andreyko entered nine days earlier on August 15, 2000. This court's decision in *Andreyko I* did not address the fees issue.

{¶ 20} On remand from this court, the trial court entered judgment for the city. As Andreyko was no longer a prevailing party, the trial court "rescinded" the fee and cost award. At the conclusion of oral argument in this appeal, Andreyko asked this court to award fees. Andreyko did not assign the trial court's decision to vacate the fee award as error in his brief, and he did not advance any argument on this issue in his brief. See App.R. 12(A)(1)(b) and 16(A)(7). An issue raised during oral argument for the first time and not assigned as error in an appellate brief is waived. See *Watkins v. Dept. of Human Serv.* (Oct. 31, 2000), 10th Dist. No. 00AP–224, 2000 WL 1617765.

Pursuant to App.R. 12(A), this court need not consider the issue, and we decline to address this argument.

## CONCLUSION

{¶ 21} Having sustained Andreyko's assignment of error, and having held that he has demonstrated that the city and CRS's legislative decision was not rationally related to a legitimate governmental interest, we reverse the judgment of the trial court and remand this case for the entry of judgment in Andreyko's favor on his claim that the city and CRS's service-credit purchase plan denied him the equal protection of the law. See Section 1983, Title 42, U.S.Code. Upon remand to the trial court, Andreyko, the prevailing party, may raise any appropriate posttrial motions.

Judgment accordingly.

DOAN, P.J., and HILDEBRANDT, J., concur.