JOURNAL ENTRY AND OPINION
{¶ 1} This consolidated appeal arises from a pretrial procedural ruling in a group of asbestos-related personal-injury cases known asIn re: Special Docket No. 73958. In Case No. 87777, defendants-appellants, Dana Corporation and numerous other entities (collectively referred to as "the Companies"), [1] appeal the trial court's order finding that the *Page 8 
asbestos claims of plaintiffs-appellees/cross-appellants (collectively referred to as "the claimants") are governed by the law as it existed prior to the effective date of Amended Substitute House Bill 292.[2]
Finding merit to the Companies' appeal, we reverse and remand.
 {¶ 2} In 1997, the Cuyahoga County Court of Common Pleas established the Special Docket to manage all pending asbestos-related personal-injury cases. These claimants allege that their nonmalignant lung diseases were proximately caused by exposure to asbestos products associated with the Companies. *Page 9 
 {¶ 3} During the 2003-2004 session, the General Assembly reviewed the state of asbestos litigation in Ohio. Based on its findings, the legislature enacted Amended Substitute House Bill 292 ("H.B. 292") in order to:
 "(1) give priority to those asbestos claimants who can demonstrate actual physical harm or illness caused by exposure to asbestos; (2) fully preserve the rights of claimants who were exposed to asbestos to pursue compensation should those claimants become impaired in the future as a result of such exposure; (3) enhance the ability of the state's judicial systems and federal judicial systems to supervise and control litigation and asbestos-related bankruptcy proceedings; and (4) conserve the scarce resources of the defendants to allow compensation of cancer victims and others who are physically impaired by exposure to asbestos while securing the right to similar compensation for those who may suffer physical impairment in the future." Am. Sub. H.B. 292, Section 3(B).
 {¶ 4} The key provisions of H.B. 292 are codified in R.C. 2307.91 through 2307.98. These provisions require plaintiffs who file an asbestos action based on allegations of nonmalignant conditions to present a prima facie showing that the exposed person has a physical impairment resulting from a medical condition, and that the person's exposure to asbestos was a substantial contributing factor to the medical condition. See R.C. 2307.92(B)-(D) and 2307.93(A)(1). *Page 10 
 {¶ 5} If the plaintiff fails to make such a showing, then the trial court is required to administratively dismiss the action, without prejudice, until the claimant can satisfy the new prima facie requirements. R.C. 2307.93(C). In addition, the prima facie filing requirements apply retroactively to causes of action arising before September 2, 2004, unless the trial court determines that retroactive application would be unconstitutional. This "savings clause" instructs the trial court to apply the law that existed before the effective date of the legislation. R.C. 2307.93(A)(3)(c).
 {¶ 6} As a result, numerous defendants in In re: Special DocketNo. 73958 moved to administratively dismiss actions in which the claimants failed to present prima facie evidence of impairment as required by R.C. 2307.92. In response, the claimants contended that the retroactive application of H.B. 292 violated the Ohio Constitution. They also argued, in the alternative, that H.B. 292 is inapplicable to their cases pursuant to the "savings clause" in R.C. 2307.93(A)(3).
 {¶ 7} The court conducted hearings and in January 2006 entered an order holding that: "[t]he retrospective application of Am. Sub. H.B. 292 is substantive rather then merely remedial in its effect and, insofar as it impairs the substantive rights of plaintiffs who filed their claims before the effective date of the statute, violates Section 28, Article II of the Ohio Constitution." The court then concluded that it will "adjudicate substantive issues in asbestos cases filed before September 2, 2004 according to the law as it existed prior to the bill's enactment * * *." *Page 11 
 {¶ 8} In February 2006, the Companies appealed this order, arguing that the retroactive application of the prima facie filing requirements in R.C. 2307.92 is constitutional. The claimants moved to dismiss the appeal for lack of final appealable order. This court granted the claimants' motion to dismiss in May 2006.
 {¶ 9} The Companies then appealed to the Ohio Supreme Court, contending that the trial court's decision is a final appealable order. See In re Special Docket No. 73958, 115 Ohio St.3d 425, 2007-Ohio-5268,875 N.E.2d 596. The Supreme Court reversed and remanded the matter, finding that the trial court's decision was a final appealable order pursuant to R.C. 2505.02(B)(4).
 {¶ 10} The matter is before us again for our review on the merits. The Companies raise one assignment of error, in which they argue that the trial court erred by concluding that R.C. 2307.91 to 2307.93 is incompatible with the Retroactivity Clause of Ohio's Constitution.
 Standard of Review {¶ 11} The interpretation of the constitutionality of a statute presents a question of law. Andreyko v. Cincinnati, 153 Ohio App.3d 108,2003-Ohio-2759, 791 N.E.2d 1025. "Questions of law are reviewed de novo, independently and without deference to the trial court's decision." Id.
 {¶ 12} "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality" and *Page 12 
"before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." State ex rel. Dickman v. Defenbacher (1955),164 Ohio St. 142, 128 N.E.2d 59, paragraph one of the syllabus.
 {¶ 13} Moreover, the presumption of validity cannot be overcome unless it appears that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution. Xenia v. Schmidt (1920), 101 Ohio St. 437, 130 N.E. 24, paragraph two of the syllabus; Dickman.
 Test for Unconstitutional Retroactivity {¶ 14} In Bielat v. Bielat, 87 Ohio St.3d 350, 2000-Ohio-451,721 N.E.2d 28, the Ohio Supreme Court outlined its test for determining the unconstitutional retroactivity of a statute. The court is first required to determine "whether the General Assembly expressly intended the statute to apply retroactively. If so, the court moves on to the question of whether the statute is substantive, rendering it unconstitutionally retroactive, as opposed to merely remedial." Id. (Internal citations omitted.)
 {¶ 15} As to the first prong of the test for determining whether a statute can be constitutionally applied retroactively, we note that all parties to this action agree that the General Assembly expressly intended for the provisions in R.C. 2307.91 through 2307.93 to apply retroactively. Thus, we must address whether the provisions are "remedial" or "substantive." *Page 13 
 {¶ 16} A retroactive statute is remedial and constitutionally retroactive if it affects "only the remedy provided, and include[s] laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right." State v. Cook, 83 Ohio St.3d 404,1998-Ohio-291, 700 N.E.2d 570, citing Van Fossen v. Babcock WilcoxCo. (1988), 36 Ohio St.3d 100, 522 N.E.2d 489. A remedial statute is one that affects "`the methods and procedure by which rights are recognized, protected and enforced, not * * * the rights themselves.'" Bielat, quotingWeil v. Taxicabs of Cincinnati, Inc. (1942), 139 Ohio St. 198, 205,39 N.E.2d 148. Thus, "[a] purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively."Cook, citing Van Fossen.
 {¶ 17} On the other hand, a retroactive statute is substantive and unconstitutional "if it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction." Id.
 {¶ 18} The Companies argue that H.B. 292 is constitutional because it is a remedial law that does not impair vested rights. The Companies rely on Norfolk S. Ry. Co. v. Bogle, 115 Ohio St.3d 455, 2007-Ohio-5248,875 N.E.2d 919, and maintain that H.B. 292 is procedural in nature.[3] We agree. *Page 14 
 {¶ 19} In Bogle, the Ohio Supreme Court recently reviewed H.B. 292 in the context of a Federal Employers Liability Act ("FELA") case. TheBogle Court considered whether the prima facie filing requirements in H.B. 292 as codified in R.C. 2307.92 and 2307.93 are substantive or procedural in nature.
 {¶ 20} Prior to discussing whether the filing requirements were substantive or procedural, the Court reviewed the history of H.B. 292, noting that the General Assembly enacted H.B. 292 "[b]ased on its belief that `[t]he current asbestos personal injury litigation system is unfair and inefficient, imposing a severe burden on litigants and taxpayers alike.' * * * By the end of 2000, `over six hundred thousand people [had] filed asbestos claims' nationwide, and Ohio had `become a haven for asbestos claims and, as a result, is one of the top five state court venues for asbestos filings.'" Id. (Citations omitted.)
 {¶ 21} Furthermore, the current docket in Ohio continues to increase at an exponential rate. H.B. 292, at Section (3)(A)(3)(e). In 1999, there were approximately 12,800 pending asbestos cases in Cuyahoga County. Id. By the end of October 2003, there were over 39,000 pending asbestos cases with approximately 200 additional cases being filed every month. Id.
 {¶ 22} The vast majority of these "asbestos claims are filed by individuals who allege they have been exposed to asbestos and who have some physical sign of exposure to asbestos, but who do not suffer from an asbestos-related impairment." Id. at Section (3)(A)(5). "Eighty-nine percent of asbestos claimants do not allege that they suffer from *Page 15 
cancer, and `sixty-six to ninety percent of these non-cancer claimants are not sick.' Id."[4] Bogle at ¶ 2.
 {¶ 23} In response to the asbestos litigation crisis in Ohio, the legislature enacted R.C. 2307.91 through 2307.98 to clarify when a plaintiff has an accrued cause of action for asbestos injury and specifies what medical evidence entitles a plaintiff to the trial court's immediate attention.[5] R.C. 2307.92(B) now provides:
 "`No person shall bring or maintain a tort action alleging an asbestos claim based on a nonmalignant condition in the absence of a prima-facie showing' of physical injury caused by asbestos exposure. The prima facie showing requires the claimant to submit a report containing medical findings and to include a demonstration `that the exposed person has a physical impairment, that the physical impairment is a result of a medical condition, and that the person's exposure to asbestos is a substantial contributing factor to the medical condition.'" Bogle at ¶ 4.
 {¶ 24} R.C. 2307.92(C) and (D) "also contains prima facie filing requirements for asbestos claimants who bring a wrongful death action, and for claimants who are smokers suffering from lung cancer." Id.
 {¶ 25} R.C. 2307.93 establishes the requirements for filing prima facie evidence. Under R.C. 2307.93(A)(1), a claimant has 30 days after initiating the action to comply with *Page 16 
the prima facie requirements specified in R.C. 2307.92(B), (C), or (D). "In cases pending at the time of the bill's passing * * * claimants have 120 days from the effective date to comply. R.C. 2307.93(A)(2). Failure to file the report results in administrative dismissal, a procedure by which the case is essentially rendered inactive, but the court retains jurisdiction over the matter. R.C. 2307.93(C).[6] A claimant may move to reinstate the case to the active docket if the claimant `makes a prima-facie showing that meets the minimum requirements specified in division (B), (C), or (D) [of] section 2307.92 of the Revised Code.' Id." Bogle at ¶ 5.
 {¶ 26} Then, in discussing the difference between substantive and procedural rules, the Bogle Court stated that: "substantive laws or rules are those that `relate to rights and duties which give rise to a cause of action.' By contrast, procedural rules concern `the machinery for carrying on the suit.'" Id. at ¶ 16, quoting Jones v. Erie RR.Co. (1922), 106 Ohio St. 408, 412, 140 N.E. 366.
 {¶ 27} The Court found that R.C. 2307.92 and 2307.93 do not grant a right or impose a duty that "`give[s] rise to a cause of action.'"Bogle, quoting Jones. The Bogle Court reasoned that:
 "the impact of these statutes is to establish a procedural prioritization of the asbestos-related cases on the court's docket. Nothing more. Simply put, these statutes create a procedure to prioritize the administration and resolution of a cause of action that already exists. No new substantive burdens are placed on claimants, *Page 17 
because Civ. R. 11 requires a party to certify, by signing a complaint, that there are `good ground[s] to support it.'" Id. at ¶ 16.
The Court concluded that the prima facie filing requirements of R.C. 2307.92 and 2307.93 are procedural in nature. Id. at the syllabus. In sum, the Court reiterated that R.C. 2307.92 and 2307.93 "are procedural in nature, apply to all asbestos claims filed in Ohio regardless of the theory or statutory basis giving rise to relief, and serve to make efficient use of judicial resources." Id. at ¶ 31.
 {¶ 28} Finding that H.B. 292 is procedural in nature, we next examine the elements of the unconstitutional-retroactivity test.
 Vested Rights Impaired {¶ 29} The first element in determining the unconstitutionality of a retroactive statute is whether the statute impairs a vested right. "A right is not regarded as vested in the constitutional sense unless it amounts to something more than a mere expectation or interest based upon an anticipated continuance of existing law." In re Emery (1978),59 Ohio App.2d 7, 11, 391 N.E.2d 746, citing Moore v. Bureau of UnemploymentCompensation (1943), 73 Ohio App. 362, 56 N.E.2d 520.
 {¶ 30} The claimants argue that the retroactive application of H.B. 292 will unconstitutionally impair their vested rights in their cause of action. We disagree.
 {¶ 31} We agree with the claimants' assertion that after a cause of action has accrued, it cannot be taken away or diminished by legislative action. State ex rel. Slaughter v. Industrial Comm. (1937),132 Ohio St. 537, 540-541, 9 N.E.2d 505. However, we find that *Page 18 
the claimants still have the right to proceed with their cause of action because H.B. 292 merely affects the method and procedure by which that cause of action is recognized, protected and enforced, not the cause of action itself. See Wilson v. ACS, Inc., 169 Ohio App.3d 720,2006-Ohio-6704, 864 N.E.2d 682; Bielat.[7]
 {¶ 32} The claimants also argue that H.B. 292 should not be applied to them because it requires plaintiffs who bring an asbestos claim to meet an evidentiary threshold that extends above and beyond the common law standard that existed at the time their claims were filed. They rely onIn re Cuyahoga County Asbestos Cases (1998), 127 Ohio App.3d 358,713 N.E.2d 20, and argue that under common law, their claims for asbestos-related injuries are compensable when there is an alteration of the lining of the lung. We find this reasoning is without merit.
 {¶ 33} H.B. 292 provides claimants with a "savings clause" found in R.C. 2307.93(A). The "savings clause" prevents a ruling that H.B. 292 itself is unconstitutional and directs courts to engage in a constitutional inquiry before applying H.B. 292 to pending cases. R.C. 2307.93(A)(3)(a) provides that, for any cause of action arising before the effective date of this section, the provisions set forth in R.C. 2307.92(B), (C), and (D) are to be applied unless the court finds that: "[a] substantive right of a party to the case has been impaired" and "that *Page 19 
impairment is otherwise in violation of Section 28 of Article II of the Ohio Constitution." If the court makes both of those findings, it must apply the law that was in effect prior to the effective date of R.C. 2307.93. Id.
 {¶ 34} If the court finds that the plaintiff has failed to provide sufficient evidence to support the cause of action, the court must administratively dismiss the plaintiff's claim without prejudice, with the court retaining jurisdiction over the case. R.C. 2307.93(A)(3)(c). Plaintiffs whose cases have been administratively dismissed may move to reinstate their cases if they provide sufficient evidence to support their cause of action under the law that was in effect when their cause of action arose. Id.
 {¶ 35} The claimants in the instant case appear to have nothing more than a mere expectation of future benefit founded upon an anticipated continuance of the law. Furthermore, R.C. 2307.93 provides claimants with the opportunity to have the court utilize the law in effect prior to September 2, 2004 if their claim arose before September 2, 2004 and they can demonstrate that a substantive right has been impaired.
 {¶ 36} Thus, we find that the claimants have failed to demonstrate that the retroactive application of H.B. 292 will deprive or diminish their vested rights. See In re Emery; Wilson.
 Accrued Substantive Rights {¶ 37} The phrase "`accrued substantive rights' has often been used synonymously with the term `vested rights.' The term `accrued' in its usual or customary meaning is defined as `to come into existence as an enforceable claim: vest as a right.' The term *Page 20 
`substantive right' has been defined as `a right that can be protected or enforced by law.'" Wilson. (Internal citations omitted.)
 {¶ 38} The claimants argue that H.B. 292 retroactively impairs their substantive rights by changing the common law definition of "substantial contributing factor." They contend that the trial court should use the definition adopted by the Ohio Supreme Court in Horton v. Harwich Chem.Corp., 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196. We disagree.
 {¶ 39} In Horton, the Ohio Supreme Court set forth the appropriate summary judgment standard for causation in asbestos cases. The Court held that "[f]or each defendant in a multidefendant asbestos case, the plaintiff has the burden of proving exposure to the defendant's product and that the product was a substantial factor in causing the plaintiffs injury." Id. at paragraph one of the syllabus.
 {¶ 40} In defining "substantial factor," the Horton Court adopted the definition contained in Restatement of the Law 2d, Torts (1965), Section 431, Comment a, which states in relevant part: "`[t]he word `substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause * * *.'"
 {¶ 41} R.C. 2307.91(FF)(1) and (2) now define "substantial contributing factor" as "[e]xposure to asbestos [that] is the predominate cause of the physical impairment alleged in the asbestos claim" and that "[a] competent medical authority has determined with a *Page 21 
reasonable degree of medical certainty that without the asbestos exposures the physical impairment of the exposed person would not have occurred."[8]
 {¶ 42} The claimants argue that the legislature's introduction of the phrase "predominate cause" in the definition of "substantial contributing factor" suggests that "the plaintiff must establish causation to a degree over and above that currently required under Ohio common law."
 {¶ 43} However, the claimants ignore the language in Comment a on which the Horton Court relies, which states that the word "cause" is being used "`in its popular sense, in which there always lurks the idea of responsibility, rather than the so-called `philosophical sense,' which includes every one of the great number of events without which any happening would not have occurred.'" Id., quoting Comment a of Section 431 of the Restatement of the Law 2d, Torts (1965).
 {¶ 44} Thus, we conclude that "R.C. 2307.91(FF)'s definition of `substantial contributing factor' comports with the definition of `substantial factor' found in Horton." See Wilson.
 {¶ 45} We also reject the claimants' argument that H.B. 292's definition of "competent medical authority" is a substantive change in the law. R.C. 2307.91(Z) now defines "competent medical authority" as a medical doctor who provides a diagnosis for *Page 22 
purposes of constituting prima facie evidence of an exposed person's physical impairment that meets the requirements specified in R.C. 2307.92. The doctor must also be a "board-certified internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist," who "is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person." R.C. 2307.91(Z)(1)-(2).
 {¶ 46} As the basis for the diagnosis, the doctor must not have relied, in whole or in part, "on the reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition (1) in violation of any law, regulation, licensing requirement, or medical code of practice of the state in which that examination, test, or screening was conducted; (2) that was conducted without clearly establishing a doctor-patient relationship with the claimant or medical personnel involved in the examination, test, or screening process; or (3) that required the claimant to agree to retain the legal services of the law firm sponsoring the examination, test, or screening. R.C. 2307.91(Z)(3)(a)-(c)." Wilson.
 {¶ 47} In addition, the doctor must not spend more than 25 percent of his or her professional practice time in providing consulting or expert services in connection with actual or potential tort actions and the medical doctor's medical group, professional corporation, clinic, or other affiliated group must not earn more than 20 percent of its revenues from providing those services. R.C. 2307.91(Z)(4). *Page 23 
 {¶ 48} Prior to H.B. 292, neither the legislature nor the Ohio Supreme Court defined these phrases.[9] Therefore, we find that it is appropriate for the legislature to clarify the phrases with a definition. In addition, because R.C. 2307.91 pertains to the competency of a witness to testify, the statute "is of a remedial or procedural [rather than substantive] nature." Wilson, citing Denicola v. ProvidenceHosp. (1979), 57 Ohio St.2d 115, 117, 387 N.E.2d 231.
 {¶ 49} Thus, we find that the provisions are procedural or remedial in nature and they do not violate Section 28, Article II of the Ohio Constitution. See Bogle; Wilson.
 Imposition of New or Additional Burdens, Duties, Obligations, or Liabilities as to a Past Transaction {¶ 50} A statute will be deemed retroactively unconstitutional when it reaches back and creates "new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective]." Beilat, quoting Miller v. Hixson (1901), 64 Ohio St. 39,51, 59 N.E. 749, 752.
 {¶ 51} With this element, the Companies claim that H.B. 292 does not trigger an analysis of past transactions. They contend that H.B. 292 "does not change the obligations of liable defendants to compensate plaintiffs injured by their conduct."
 {¶ 52} In the instant case, we find that the retroactive application of the relevant provisions of H.B. 292 does not impose any "new or additional burdens, duties, obligations, *Page 24 
or liabilities" on parties seeking to bring an asbestos claim because the changes made by H.B. 292, such as defining "competent medical authority," are procedural or remedial and not substantive in nature. Therefore, we conclude that the retroactive application of H.B. 292 does not offend the Ohio Constitution. See Bogle; Wilson; Bielat.
 The Retroactive Application of the Relevant Portions of R.C. 2307.91 through 2307.98 is Constitutional {¶ 53} In light of the foregoing, we conclude that the relevant provisions of H.B. 292 are remedial in nature, clarifying the meaning of ambiguous phrases like "bodily injury caused by exposure to asbestos," "substantial contributing factor," and "competent medical authority."
 {¶ 54} The ambiguity of these phrases has "produced an extraordinary volume of cases that strains our courts and that threatens to overwhelm the judicial system in this state." H.B. 292 at Section 3(A)(2). Thus, the remedial legislation in H.B. 292 serves to avoid a multiplicity of suits, the accumulation of costs, and promotes the interests of all parties by ensuring that "only those parties who actually have been harmed by exposure to asbestos receive compensation for their injuries." See Bogle; Wilson.
 {¶ 55} Therefore, the Companies' sole assignment of error is sustained.
 {¶ 56} Accordingly, judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.
It is ordered that appellants recover of said appellees costs herein taxed.
 The Court finds there were reasonable grounds for this appeal. *Page 25 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART., CONCURS; MARY EILEEN KILBANE, J., DISSENTS
[1] At the time of the filing of its brief, appellants listed the following companies as parties to the appeal: Dana Corporation, Goodrich Corporation, The Goodyear Tire Rubber Company, CertainTeed Corporation, 3M Company, ITT Industries, Inc., Allied Chemical Corporation, Union Carbide Corporation, Amchem Products, Inc., American Standard, as successor to Westinghouse Air Brake Company, Ericsson, Inc., C.P. Hall Company, ExxonMobil Corporation, Ford Motor Company, General Motors Corporation, Alliance Machine Company, Lexington Precision Corporation, Allied Glove Corporation, Cooper Industries, Inc., Hinchcliffe Keener, Inc., Ajaz Manufacturing Co., Albany International Corp., Alcoa, Inc., Applied Industrial Technologies, Inc., Durametallic Corporation, Ecodyne MRM, Inc., Gardner Denver, Inc., Illinois Tool Works, Inc., (sub nom. Devcon Corp.), The Kerite Company, National Machinery Co., Park Ohio Industries, Inc., Robertson-Ceco Corp. fka H.H. Robertson Company, Rockbestos-Surprenant Cable Corp., Seegott, Inc., Viking Pump, Inc., Warren Pumps, Inc., Weil-McLain Boilers, Zurn Industries, Inc., Eaton Corporation, as successor in interest to Cutler-Hammer, Inc., nka Eaton Electrical, Inc., Eaton Corporation, Borg Warner Corporation, Ceecorp, Inc. dba The Cleveland Gypsum Co., fka The Cleveland Builders Supply Company, Dossert Corporation, Durabla Manufacturing Company, Duro Dyne Corporation, The Edward R. Hart Company, Essex Group, Inc., Kentile Floors, Inc., the Minster Machine Company, Ohio Valley Insulating Company, Inc., Standard Glove and Safety Equipment Company, Norfolk Southern Railway Company, Consolidated Rail Corporation, American Premier Underwriters, Inc., CSX Transportation, Inc., Grand Trunk Western Railroad Corporation, Beazer East, Inc., Tasco Insulation, Inc., Allen Refractories, Inc., Osborne, Inc., Ingersoll Rand Company, Ingersoll-Dresser Pump Company, Goulds Pumps, Inc., Thiem Corporation and its Universal Refractories Division, Carlisle Companies, Inc., Motion Controls Industries, Safety First Industries, Inc., O'Connor Steel Supply Co., Allis Chalmers Product Liability Trust, Cyprus Industries Minerals Company, Bryan Steam Corp., Burnham Corp., American Biltrite, Inc., Phelps Dodge Industries, Inc., C.D. Center Corporation, Sherwin Williams Company, G.W. Berhheimer Co., Inc., Fulton Iron and Manufacturing, Inc., Sur Seal Gasket Packing Co., Inc., Garlock Sealing Technologies, DaimlerChrysler Corporation, Sepco Corporation, Greene, Tweed Company, FMC Corporation, D.B. Riley, Inc., Volkswagen of America, Inc., ACF Industries, Inc., Nock Refractories Company, John Hancock Life Insurance Company, Hyster Company, Hyster Mid East, Norton Company nka Saint Gobain Abrasives, Inc., Kaiser Gypsum Company, Inc., Aurora Pump Division of Signal Corp., Dezurik, Inc., Lindberg MPH, New York Air Brake, Advance Auto Parts, Inc., John Crane, Inc., Tuthill Corp., Sears, Roebuck Co., Owens-Illinois, Inc., SB Decking, Inc., fka Selby, Battersby Company, R.E. Kramig Co., Inc., Engelhard Corporation, Fidelity Builders Supply, Stevens Painton Corporation, Graybar Electric Co., Inc., Morton International, Inc., A Rohm Haas Company, Akron Gasket Packing Enterprise, Inc., Harwick Chemical Corp., Lockheed Martin Corporation, The BOC Group, Inc. fka Airco, Inc., The Esab Group, Inc., Hobart Brothers Company, Lincoln Electric Company, McCord Corporation, Pneumo Abex LLC, as successor-in-interest to Abex Corporation, A.W. Chesterton Company, Honeywell International, Inc. fka Allied Signal, Inc. fka Bendix Corporation and Pittsburgh Metals Purifying Company, F.B. Wright Company and Libra Industries, Inc. of Michigan, Bondex International, Inc., RPM, Inc., F.B. Wright Company of Cincinnati, A.O. Smith Corporation, Mahoning Valley Supply Company, Hersh Packing and Rubber Company, Hollow Center Packing Company, Donald McKay Smith, Brandon Drying Fabrics, Georgia-Pacific Corporation, The Cleveland Electric Illuminating Company, The Toledo Edison Company, The Ohio Edison Company, and Crane Co.
[2] The claimants filed a cross-appeal in Case No. 87816, appealing the same order. Both cases have been consolidated by this court for record, briefing, hearing, and disposition. We note that the claimants failed to file separate assignments as required by App. R. 16(A)(3). Since App. R. 12(A)(2) provides that we may disregard their cross-appeal, and because their cross-appeal merely responds to the Companies' merit brief, we will only address the Companies' appeal.
[3] We note that the Ohio Supreme Court has certified a conflict as to whether R.C. 2307.91 through 2307.93 can be applied to cases already pending on September 2, 2004. See Ackison v. Anchor Packing Co.,113 Ohio St. 3d 1464, 2007-Ohio-1722, 864 N.E.2d 651. The Court held oral argument in November 2007 and had not released its decision before this opinion was released.
[4] Plaintiffs with asbestos claims are receiving less than 43 cents on every dollar awarded, and 65 percent of the compensation paid, thus far, has gone to claimants who are not sick. Id. at Section 3(A)(2).
[5] Before September 2, 2004, the General Assembly did not define the terms "bodily injury caused by exposure to asbestos" or "competent medical authority" as provided in R.C. 2305.10 in stating when an asbestos-related personal injury arises or accrues under Ohio law. R.C. 2305.10(B)(5) provides that: "* * * a cause of action for bodily injury caused by exposure to asbestos accrues upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure * * *"
[6] "Administrative dismissal" is a new tool the General Assembly gave courts to manage asbestos litigation, which thereby tolls the statute of limitations.
[7] In Wilson, the Twelfth District Court of Appeals addressed the constitutionality of H.B. 292 and concluded that it does not violate the Ohio Constitution when applied to pending cases. The court found that the changes made by H.B. 292 are procedural in nature and not substantive. Wilson is in conflict with Ackison, however, which is pending before the Ohio Supreme Court.
[8] The legislature also defined "bodily injury caused by exposure to asbestos" as a "physical impairment of the exposed person, to which the person's exposure to asbestos is a substantial contributing factor." R.C. 2307.92.
[9] We note that R.C. 2305.10 has always used the term "competent medical authority."