[Cite as *State v. Bishop*, 2023-Ohio-947.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220231 |
| | | TRIAL NO. B-2105094 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| MORGAN JAY BISHOP, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed as Modified

Date of Judgment Entry on Appeal: March 24, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}    After entering guilty pleas, defendant-appellant Morgan Jay Bishop was convicted of aggravated burglary and aggravated robbery for an incident at the home of Vincent Accurso, and burglary for an unrelated incident at another home. As part of Bishop's sentence, the trial court imposed consecutive terms of incarceration for each offense and ordered Bishop to stay away from his victims for life.  On appeal, Bishop argues the trial court erred by failing to merge the Accurso-related offenses into one conviction and by imposing the stay-away order.

{¶2}    For the reasons that follow, we hold that Bishop's merger argument lacks merit, but the trial court erroneously imposed the stay-away order.

## I. Background Facts and Procedure

{¶3}    In October 2021, a Hamilton County Grand Jury returned a seven-count indictment against Bishop involving offenses occurring at two separate homes located in Hamilton County, including the home of Accurso.  With respect to Accurso, Bishop was charged with two counts of aggravated burglary, one count of aggravated robbery, one count of robbery, and two counts of felonious assault. The final count involved a burglary at the home of Debora and Don Kuchey.  The state did not file a bill of particulars.

{¶4}    Bishop initially entered not-guilty pleas but later waived his right to a jury trial and entered into a plea bargain with the state. With respect to the Accurso-related offenses, Bishop pleaded guilty to aggravated burglary in violation of R.C. 2911.11(A)(1), involving the threat or infliction of "physical harm," aggravated robbery in violation of R.C. 2911.01(A)(3), involving the threat or infliction of "serious physical harm," and felonious assault under R.C. 2903.11(A)(1), involving the infliction of

2

"serious physical harm." The state dismissed the rest of the Accurso- related counts, including those specifying the use of a "deadly weapon."

{¶5} At the plea hearing, the prosecuting attorney read the indictment and told the court few details about 82-year-old Accurso's encounter with Bishop. Bishop did not offer any facts. The parties did not discuss the merger of offenses or enter into any stipulations concerning merger. The court accepted Bishop's guilty pleas, ordered a presentence investigation, and continued the case for sentencing.

{¶6} Before the sentencing hearing, Bishop filed a sentencing memorandum in which he argued the Accurso-related offenses merged. Without reference to the details of the encounter, he contended there was one continuous physical attack on Accurso to obtain Accurso's property. The state filed an opposing memorandum in which it contended that only the aggravated-robbery and felonious-assault offenses merged. According to the state, there was an attack in the kitchen that caused the physical-harm element of aggravated burglary and a separate attack in the garage that caused the serious-physical-harm element of the aggravated robbery and the felonious assault.

{¶7} The state relied on discovery in the case, including video recordings of police interviews of Accurso at the scene and in the hospital, to show the details of the encounter. According to the state, the encounter began when Bishop came to Accurso's home with a female accomplice and made up a false story to gain entrance into the home and to rob Accurso. Because Bishop and his accomplice told Accurso that they were having car problems, Accurso invited them in and allowed them to use his phone to call for a ride. Bishop indicated that he was unable to reach anyone and then said he had misplaced his car keys. When Accurso went outside to help look for

the keys, Bishop stayed behind. Accurso became concerned and reentered his home to find Bishop in the kitchen.

{¶8}   While in the kitchen, Bishop

struck [Mr. Accurso] in the stomach and about the body and demanded to know where Mr. Accurso kept his jewelry. When [Bishop] went to go look for the jewelry, Mr. Accurso grabbed a kitchen knife and pursued [Bishop.] [Bishop] ran outside and when Mr. Accurso pursued, through the garage, [Bishop] struck Mr. Accurso with a landscape brick. The landscape brick was subsequently recovered in the garage and contained the blood and hair of Mr. Accurso. * * * Bishop then proceeded to steal Mr. Accurso's car, after finding the keys in Mr. Accurso's pocket. Mr. Accurso had to be hospitalized as a result of his serious head injury.

{¶9}   Based on these details, the state argued the aggravated burglary only involved the conduct and "physical harm" inflicted in the kitchen with punches and kicks, and the aggravated robbery and felonious assault involved the conduct and "serious physical harm" inflicted outside with the brick. That blow to Accurso's head with the brick caused severe memory loss and related issues, leaving him unable to live independently or even to recognize his family. Though conceding that the aggravated-robbery and felonious-assault offenses merged, the state argued that the aggravated-burglary and aggravated-robbery offenses did not.

{¶10}   At the sentencing hearing, Bishop challenged the state's position that he had pleaded guilty to any conduct involving the brick, because the state had dismissed the aggravated-burglary and felonious-assault offenses charging as an element the use

of a deadly weapon. Bishop also contested the state's version of the facts because of conflicting statements made by Accurso during the recorded interviews. In the first interview, which took place at the scene, Accurso, who was sitting on his porch with a bleeding gash on his head, told officers he had been struck by a "rock." In the second interview, which took place at the hospital, Accurso told officers he had not been hit by any object and that he must have suffered his head injury when he was taken down to the kitchen floor. Finally, Bishop contested the state's position that physical injuries inflicted in the same event could be viewed as separate harms for merger analysis.

**{¶11}** The trial court admitted the interview videos as exhibits at the sentencing hearing.[1] After reviewing the evidence presented at the sentencing hearing, including the uncontested evidence that a landscape brick containing Accurso's hair and blood was found in the garage and evidence that Accurso had suffered a serious head injury in addition to other injuries, the court adopted the state's position and found the aggravated burglary and aggravated robbery did not merge because they were not of a "similar import."

**{¶12}** The trial court then sentenced Bishop to ten years' incarceration for the aggravated burglary, ten years' incarceration for the aggravated robbery, and 24 months' incarceration for the unrelated burglary. The sentences were made consecutive to one another for an aggregate term of 22 years. As part of the sentences, the trial court additionally ordered Bishop "to stay away from" Accurso and the Kucheys "for life." On appeal, Bishop challenges his sentences in a single assignment of error.

---

[1] The exhibit contains three files, one from the interview at scene and two from the hospital interview.

## II. Analysis

### A. Offenses of a Dissimilar Import Do Not Merge

**{¶13}** We first address Bishop's argument that the trial court erred by convicting him of both aggravated burglary and aggravated robbery for the encounter at Accurso's home. He contends that under Ohio's merger statute, R.C. 2941.25, the offenses merge.

**{¶14}** R.C. 2941.25 precludes separate convictions for offenses that are allied offenses of similar import, committed neither separately nor with a separate animus. *See State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. Bishop was found guilty of aggravated burglary under R.C. 2911.11(A)(1), which provides:

> No person by force, stealth, or deception, shall trespass in an occupied structure * * * when another person * * * is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another.

**{¶15}** He was also convicted of aggravated robbery under R.C. 2911.01(A)(3), which provides:

> No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, or attempt to inflict, serious physical harm on another.

**{¶16}** The elements of the offenses help frame the merger analysis. But to determine whether offenses merge, we focus on the conduct of the defendant and apply the test announced by the Ohio Supreme Court in *Ruff*:

> [W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three

6

questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 31.

{¶17} "The focus of the analysis must be on the defendant's conduct 'because an offense may be committed in a variety of ways and the offenses committed may have different import.' " *State v. Hendrix*, 1st Dist. Hamilton No. C-210679, 2023-Ohio-17, ¶ 16, quoting *State v. Savage*, 2022-Ohio-3653, 199 N.E.3d 144, ¶ 27 (1st Dist.), citing *Ruff* at ¶ 30. Offenses are of dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23.

{¶18} Here, Accurso was the sole victim of the challenged aggravated-burglary and aggravated-robbery offenses, so we must consider whether the harm that resulted from each offense was separate and identifiable. Offenses are "not allied offenses of similar import if neither [offense] is incident to the other." *Ruff* at ¶ 23. Thus, where the conduct that constitutes one offense causes a harm that is not separate and identifiable from the harm caused by the aggravating element of another offense, then the offenses are of a similar import.

{¶19} The trial court adopted the state's position that the offenses were of a dissimilar import. Critical to the state's position was a view of the facts consistent with the recovery of the bloody brick in the garage area, and not in the kitchen. This

indicated that the serious head injury necessary to establish the aggravated robbery was not merely incidental to the bruising and cuts resulting from Bishop punching and kicking Accurso in the kitchen. In other words, Bishop's conduct caused separate, identifiable harms.

{¶20}  Bishop acknowledges that the physical-harm element of the aggravated-burglary offense and the serious-physical-harm element of the aggravated-robbery offense were "met with separate injuries or harms."  He argues, however, that the harms were inflicted in the "same fight," even if part of the fight took place in the garage and another part in the kitchen.  And he asserts that parsing of the conduct at sentencing and not before "led the defense into believing that the plea bargain represented a factual scenario more conducive to merger."  Ultimately, Bishop argues that based on the facts the trial court erred by failing to merge the offenses. We perceive Bishop's challenge as a legal one, thus we review the trial court's merger determination de novo. *See State v. Bailey*, Slip Opinion No. 2022-Ohio-4407, ¶ 13, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 16-27.

{¶21}  We first address Bishop's argument that the state is prohibited from parsing out conduct during a fight to show separate and identifiable resulting harm. In support of his argument,  Bishop cites this court's opinion in *Ruff* after a remand from the Ohio Supreme Court.  *State v. Ruff*, 1st Dist. Hamilton Nos. C-120533 and C-120534, 2015-Ohio-3367 ("*Ruff II*").  In that case, the defendant had been found guilty by a jury of aggravated burglary and rape involving the same victim, and the element of physical harm for the aggravated burglary was the same harm that resulted when each burglary escalated to aggravated burglary. *Id*. at ¶ 19.

{¶22} When addressing the state's argument, raised for the first time on remand, that Ruff caused or threatened injuries beyond the rape, this court referenced a pre-*Ruff* case in which the Ohio Supreme Court rejected an approach that parsed out harm inflicted in a "sequence of blows to a victim." *See id.* at 20, citing *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 56, *abrogated in part by Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 1. We also pointed out that the state's new argument contradicted its earlier position in the case. *Id.* at ¶ 21; *see State v. Wilson*, 2d Dist. Clark No. 2018-CA-2, 2020-Ohio-2962, ¶ 125-128 (Finding improper the state's attempt at sentencing to differentiate between the conduct underlying the felonious assault and the domestic violence, where the state failed to do so in the indictment or bill of particulars or during the jury trial.).

{¶23} This case, unlike *Ruff*, involved a plea agreement, and the state at the sentencing hearing identified the separate harm caused by Bishop by conduct that was not continuous but instead separate. Moreover, unlike in *Johnson*, the physical harm inflicted as part of the aggravated burglary and the serious physical harm inflicted as part of the aggravated robbery were not the result of the "same" "discrete" "beating." *See Johnson* at ¶ 56. Further, though Bishop contends the state misled him about the offenses to which he was pleading, that contention is not supported by the record. The state's position at sentencing was consistent with the indictment and plea agreement.

{¶24} We note that the defendant bears the burden of establishing that merger is appropriate under R.C. 2941.25. *See State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18. The parties may stipulate to facts that weigh on the merger analysis as part of a plea agreement. *See State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 29. The parties did not enter into any stipulations

9

in this case, and nothing in the record suggest that the state attempted to trick Bishop during plea negotiations. Notably, Bishop did not move to withdraw his pleas on the basis that he had been misled.

{¶25} Upon our review, we arrive at the same conclusion as the trial court. The record demonstrates that the harm resulting from each offense was separate and identifiable. The aggravated circumstance of aggravated robbery involved the serious physical harm that Bishop inflicted on Accurso when he struck him in the head with the brick before fleeing in Accurso's car. This conduct caused aphasia and an end to Accurso's quality of life, rendering him incapacitated. Bishop inflicted serious physical harm separately from the physical harm inflicted in the kitchen, and the head injury, though not fatal, was life altering and bore a significance apart from the injuries inflicted in the kitchen.

{¶26} Because the record demonstrates that each offense generated its own separate and identifiable harm, we conclude that the aggravated burglary and aggravated robbery in this case are of dissimilar import. Thus, the offenses do not merge. *See Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 31; *State v. McKnight*, 2022-Ohio-591, 185 N.E.3d 1148, ¶ 44 (10th Dist.).

## B. Stay-Away Order Was Improper

{¶27} Bishop additionally challenges his sentences on the ground that the stay-away order, a community-control sanction, was improper.[2] Generally, it is

---

[2] Though the assignment of error contained in Bishop's brief raises only a merger issue, at oral argument Bishop requested to challenge his sentence on the ground that the trial court erred by including a stay-away order in the sentencing entry. The state conceded the error and joined in Bishop's request for vacation of the stay-away language in the sentencing entry. In light of the state's position, the court considers the issue, though we need not do so. *See Andreyko v. City of Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, 791 N.E.2d 1025, ¶ 20 (1st Dist.).

contrary to law for "a court [to] impose a prison term and a community-control sanction for the same offense." *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 31-32, quoted in *State v. Patrick*, 1st Dist. Hamilton No. C-220049, 2022-Ohio-4171, ¶ 8.

{¶28} Here, the trial court erroneously imposed the stay-away order after imposing prison terms. Where a court erroneously imposes both types of sanctions, the proper remedy is to vacate the no-contact portion of the sentence, leaving the prison sanction undisturbed. *Patrick* at ¶ 9.

### III. Conclusion

{¶29} We sustain Bishop's assignment of error in part because the trial court erred by imposing a no-contact order as part of his sentences in addition to imposing prison terms. We overrule the assignment of error in part because the trial court did not err by failing to merge the aggravated-burglary and aggravated-robbery offenses. Consequently, we vacate the no-contact portion of the sentences. In all other respects the judgment is affirmed.

Judgment affirmed as modified.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.