[Cite as *State v. Delvallie*, 2021-Ohio-1809.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,            :

                                              No. 109315

    v.                                     :

BRADLEY DELVALLIE,                       :

    Defendant-Appellant.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** May 27, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-645262-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Catherine Coleman and Daniel Van, Assistant Prosecuting Attorneys, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, Paul A. Kuzmins, Assistant Public Defender, *for appellant*.

ANITA LASTER MAYS, P.J.:

## I.   Introduction

{¶ 1} On November 26, 2019, defendant-appellant Bradley Delvallie ("Delvallie") pleaded guilty and was sentenced on one count of aggravated robbery,

R.C. 2911.01(A)(1), a first-degree felony.  Delvallie's sole challenge on appeal is to the constitutionality of his sentence imposed pursuant to S.B. 201 known as the Reagan Tokes Law.  Delvallie assigns as error:

> As amended by the Reagan Tokes Law, the Ohio Revised Code's sentences for first-and-second-degree qualifying felonies violate the Constitutions of the United States and the State of Ohio.

## II.   Reagan Tokes Law

{¶ 2}   This court explained the sentencing impact of the law in *State v. Dames*, 8th Dist. Cuyahoga No. 109090, 2020-Ohio-4991:

> Senate Bill 201, commonly known as the Reagan Tokes Law, became effective on March 22, 2019.  The statute returns an indefinite sentencing scheme to Ohio for certain qualifying offenses.  All first-and second-degree felonies committed after March 22, 2019, that are not already carrying a life sentence are considered qualifying offenses. When confronting a nonconsecutive or concurrent sentence, the Reagan Tokes Law first requires the sentencing judge to impose an indefinite sentence with a minimum term selected by the judge.  The judge must also impose a maximum term predetermined pursuant to a statutory formula set forth in R.C. 2929.144.  The maximum term is 50% of the minimum term plus the minimum term.  An offender sentenced under Reagan Tokes has a rebuttable presumption of release at the conclusion of his minimum term.  However, at the conclusion of his minimum term, the Ohio Department of Rehabilitation and Correction ("ODRC"), must hold a hearing and may rebut the presumption of release.

> At the hearing, the ODRC must make specific findings to justify keeping the offender beyond the presumptive release date up to the maximum sentence.  In the instant case, Dames has a minimum sentence of seven years, and a maximum sentence of ten and a half years, the ODRC may make specific findings and hold Dames up to three and a half years more than his minimum term until the conclusion of the maximum term.

> Pursuant to R.C. 2967.271(C), the ODRC must find that one of the following three conditions applies in order to hold an offender beyond the minimum term:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division. The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

*Id.* at ¶ 2-4.

**{¶ 3}** In addition,

[w]hile the ODRC may exercise its discretion to keep an offender imprisoned, it also may exercise its discretion to demonstrate that the offender merits early release, as long as the offender is not disqualified due to his [or her] security level. Under the Reagan Tokes Law, the ODRC must draft administrative rules that credit inmates who demonstrate appropriate conduct with "earned reduction of minimum prison term" ("ERMPT"). ERMPT can reduce the minimum term between 5 and 15%. There is a rebuttable presumption that the offender gets the ERMPT credit once the ODRC requests it for the inmate.

The trial court will hold a hearing where the victim of the crime and the state of Ohio can present arguments that the offender should stay in

prison. The trial court must then make findings to rebut the presumption; otherwise the ERMPT is considered earned.

*Id.* at ¶ 5-6.

## III. Standard of Review

**{¶ 4}** It has been established that:

There are two primary ways to challenge the constitutionality of a statute: by facial challenge or through an "as-applied" challenge. *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. In a facial challenge to the constitutionality of a statute, the claimant must show that there are no set of facts under which the challenged statute is constitutional. An as-applied challenge alleges that a particular application of a statute is unconstitutional. "Facial challenges present a higher hurdle than as-applied challenges because, in general, for a statute to be facially unconstitutional, it must be unconstitutional in all applications." *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7, citing *Oliver v. Cleveland Indians Baseball Co. Ltd. Partnership*, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205, ¶ 13.

*Derrico v. State*, 8th Dist. Cuyahoga No. 107192, 2019-Ohio-1767, ¶ 17.

**{¶ 5}** "The interpretation of the constitutionality of a statute presents a question of law." *In re Special Docket No. 73958*, 8th Dist. Cuyahoga Nos. 87777 and 87816, 2008-Ohio-4444, ¶ 11, citing *Andreyko v. Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, 791 N.E.2d 1025 (1st Dist.). "'Questions of law are reviewed de novo, independently and without deference to the trial court's decision.'" *In re Special Docket* at *id.*, quoting *Andreyko* at 112.

**{¶ 6}** Additionally,

"[a] regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality" and "before a court may declare it

unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible."

*In re Special Docket* at ¶ 12, quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus.

{¶ 7} "Moreover, the presumption of validity cannot be overcome unless it appears that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution." *In re Special Docket* at ¶ 13, citing *Xenia v. Schmidt*, 101 Ohio St. 437, 130 N.E. 24 (1920), paragraph two of the syllabus.

## IV. Discussion

{¶ 8} Delvallie was sentenced as follows:

The court imposes a prison sentence at the Lorain Correctional Institution of 3 year(s). The court imposes a minimum prison term of 3 year(s) and a maximum prison term of 4.5 year(s). The total stated prison term is a total of 3 to 4.5 years at the Lorain Correctional Institution. Count 1: F[elony] 1, an indefinite minimum prison term of 3 year(s), a maximum term of 4.5 years.

The court has notified the defendant that pursuant to R.C. 2929.19(B)(2)(c), it is rebuttably presumed that the defendant will be released from service of the sentence on the expiration of the aggregate minimum prison term imposed (and after the service of the specification) or presumptive early release date, whichever is earlier. That the Department of Rehabilitation and Correction may rebut the presumption if it makes specified determinations at a hearing regarding offender's conduct while confined, threat to society, restrictive housing and/or security classification while confined pursuant to R.C. 2967.271, and may then maintain the defendant's incarceration after the expiration of the aggregate minimum prison term for a reasonable time and may make such determinations more than one time up to the aggregate maximum prison term. The trial court can conduct a hearing and find the early release date is rebutted pursuant to R.C. 2967.271(F)(1).

Nov. 26, 2019 Sentencing Journal Entry.  Postrelease control was also imposed with related advisements.

{¶ 9}  Delvallie posed objections to the constitutionality of Reagan Tokes Law at the sentencing.  Delvallie argues that the law directly impinges multiple state and federal constitutional protections by: (1) delegating to the executive branch the fact-finding necessary to impose a sentence beyond the statutory presumption in violation of the right to trial by jury; and (2) failing to ensure adequate due process prior to imposition of an enhanced sentence.

{¶ 10} Specifically, Delvallie asserts that the following constitutional rights are infringed, ignored, or diluted:

> The right to trial by jury as protected by the Sixth Amendment of the United States Constitution and Article I, Section 5 of the Ohio Constitution.
>
> The province of the judiciary pursuant to Article III of the United States Constitution and Section 1, Article IV, of the Ohio Constitution.
>
> The right to due process under the Fourteenth Amendment of the United States Constitution and Article I, Section 16, of the Ohio Constitution.
>
> Inadequate guarantees for a fair hearing pursuant to Fourteenth Amendment of the United States Constitution and Article I, Section 10, of the Ohio Constitution.

**A.  Plain Error**

{¶ 11} Since its inception, the constitutionality of Reagan Tokes Law has been challenged.  The first wave of challenges was generally rebuffed by appellate courts that determined that the failure to object in the trial court served to forfeit the

issue for appeal. *See, e.g.*, *State v. Young*, 8th Dist. Cuyahoga No. 108868, 2020-Ohio-4135, ¶ 21.

**{¶ 12}** The failure to argue plain error also served as a death knell for aspiring appellants. *See*, e.g., *Dames*, 8th Dist. Cuyahoga No. 109090, 2020-Ohio-4991 at ¶ 14. ("Dames did not raise any plain error arguments for us to address."). Also, in *Dames*, this court recognized that Ohio's appellate courts have taken inconsistent approaches to a Reagan Tokes Law protest:

> Finally, we note that some of our sister courts have found that challenges to the Reagan Tokes Law are not yet ripe for review. *See State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227; *State v. Manion*, 5th Dist. Tuscarawas No. AP 03 0009, 2020-Ohio-4230; *State v. Kibler*, 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631; *State v. Maddox*, 6th Dist. Lucas No. CL-19-1253, 2020-Ohio-4702; *see also State v. Conant*, 4th Dist. Adams No. 20CA1108, 2020-Ohio-4319 (declining to review a Reagan Tokes Law challenge where the defendant did not present a plain error argument and the defendant did not address whether his challenge was ripe.)

*Id.* at ¶ 20. In the instant case, Delvallie properly preserved the issue for error.

**B. Ripeness**

**{¶ 13}** This court also observe that the question of "the authority of the executive branch to hold defendants beyond the end of the minimum term and presumption of release" is inherent in a Reagan Tokes Law challenge. *Id.* The Fifth and Sixth Districts have held that "there was no injury and therefore nothing for the courts to do" because the defendant had not yet served their minimum term and been imprisoned for all or a portion of the maximum term by the executive branch. *Id.*

{¶ 14} Recently, the Ohio Supreme Court certified a conflict among the districts regarding when the issue of constitutionality is ripe for review:

> The parties are to brief the issue as stated on pages 1-2 of the court of appeals' October 14, 2020 entry: "Is the constitutionality of the provisions of the Reagan Tokes Law, which allow the Department of Rehabilitation and Correctio[n] to administratively extend a criminal defendant's prison term beyond the presumptive minimum term, ripe for review on direct appeal from sentencing, or only after the defendant has served the minimum term and been subject to extension by application of the Act?" The conflict cases are *State v. Leet*, 2d Dist. Montgomery No. 28670, 2020-Ohio-4592; *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150; and *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837.

*State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150.

{¶ 15} Notwithstanding the pending case, we elect to throw our hat into the proverbial ring as we find that Delvallie's argument is ripe for adjudication and has merit. As the appellant argues in *Maddox*, the constitutional challenge to the Reagan Tokes Law is ripe for direct appeal because the "maximum potential punishment influences pretrial practice, plea-bargaining, and the decision to go to trial." *Maddox* brief, p. 7 (Jan. 26, 2021).

{¶ 16} The Ohio Supreme Court's clarification of void versus voidable judgments in *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, effectively corralled the ability of a defendant to collaterally attack a sentence or conviction. Where the trial court has personal jurisdiction over an accused and subject matter jurisdiction over the case, and

> the court had the *constitutional and statutory power* to enter a finding of guilt and impose a sentence, any error in the exercise of its

jurisdiction in failing to properly impose postrelease control rendered the judgment of conviction voidable, not void, and it is not subject to collateral attack.

(Emphasis added.) *Id.* at ¶ 5.

{¶ 17} The court subsequently released *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, and held that a "sentence is void only if the sentencing court lacks jurisdiction over the subject matter of the case or personal jurisdiction over the accused." *Id.* at ¶ 27. The court rebuffed the state's attempt to have the statutorily required life tail imposed 18 years after sentencing because the sentence was voidable, not void, and the state did not object at trial or by direct appeal.

{¶ 18} Thus, we find that, on the one hand, the issue is directly appealable pursuant to *Harper* and *Henderson* because the sentence is voidable. We agree with the argument in *Maddox* that

> [it] makes no sense to "wait and see" if the Tokes law is unconstitutional until after an inmate is held-over because a Byzantine system that postpones adjudication until after someone is physically restrained under an extended sentence results in the worst legal harm — loss of liberty that cannot be retroactively remedied.

*Maddox* brief, p. 4.

## C. Constitutionality

### 1. Right to Trial by Jury

{¶ 19} Delvallie argues that Reagan Tokes is unconstitutional under the Sixth Amendment to the United States Constitution and Article I, Section 5 of the Ohio Constitution. The Ohio Supreme Court recently reiterated:

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." This entitles criminal defendants "to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Ring* [*v. Arizona*], 536 U.S. [584,] 589, 122 S.Ct. 2428, 153 L.Ed.2d 556 [(2002)]. *See also Hurst* [*v. Florida*, 577] U.S. [92], 136 S.Ct. 616, 619, 193 L.Ed.2d 504 [2016] ("The Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death"). Ohio's death-sentence scheme satisfies this right.

*State v. Mason*, 153 Ohio St.3d 476, 2018-Ohio-1462, 108 N.E.3d 56, ¶ 19.

{¶ 20} In *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the United States Supreme Court conducted a Sixth Amendment jury trial guaranty inquiry. In *Walton v. Arizona*, 497 U.S. 639, 111 L.Ed.2d 511, 110 S.Ct. 3047 (1990), the court approved Arizona's capital sentencing scheme that allowed a trial judge, subsequent to a jury's conviction of first-degree murder, to determine whether aggravating factors existed to impose the death penalty. The court said the Sixth Amendment protections remained intact because the judge was simply addressing sentencing factors.

{¶ 21} In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), "a noncapital case," the court determined "the Sixth Amendment did not permit defendants to receive a penalty greater than they could receive under the facts reflected in a jury's verdict." *Ring* at 588, hn. 1. This was true "even if a judge's additional findings were characterized as sentencing factors." *Id.*

{¶ 22} The court determined that the holdings could not be reconciled. "*Apprendi's* reasoning is irreconcilable with *Walton's* holding in this regard, and

today we overrule *Walton* in relevant part." *Ring* at 589. "Capital defendants, no less than noncapital defendants * * * are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* There is "no reason to differentiate capital crimes from all others in this regard." *Id.* at 607. The Sixth Amendment applies to both "the factfinding necessary to increase a defendant's sentence by two years" and "the factfinding necessary to put him [or her] to death." *Id.* at 609.

{¶ 23} In fact, the court had previously explained that,

"'under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'" [*Jones v. United States*,] 526 U.S. at [227], [119 S.Ct. 1215, 143 L.Ed.2d 311 (1999),] fn. 6. The Fourteenth Amendment commands the same answer in this case involving a state statute.

*Apprendi*, 530 U.S. at 476, 120 S.Ct. 2348, 147 L.Ed.2d 435, quoting *Jones v. United States*, 526 U.S. 227, 243, 119 S.Ct. 1215, 143 L. Ed. 2d 311 (1999), fn. 6, construing a federal statute.

{¶ 24} Delvallie argues that *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), holds that the Sixth Amendment prohibits a trial judge "from making any finding necessary for the imposition of a particular sentence unless that finding was reflected in the jury's verdict." Appellant's brief, p. 5.

{¶ 25} *Blakely* also explains that the prohibition does not apply solely to sentences that exceed the maximum limit.

the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he [or she] may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," [ 1 J.] Bishop, [*Criminal Procedure*] § 87, p 55 [2d ed. 1872] and the judge exceeds his [or her] proper authority.

*Id.* at 303-304.

{¶ 26} Delvallie also cites *Blakely's* elaboration that:

Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in *Apprendi*), one of several specified facts (as in *Ring*), or any aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact.

*Id.* at 305.

{¶ 27} In addition,

Nor does it matter that the judge must, after finding aggravating facts, make a judgment that they present a compelling ground for departure. He [or she] cannot make that judgment without finding some facts to support it beyond the bare elements of the offense. Whether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence.

(Emphasis added.) *Blakely* at fn. 8.

{¶ 28} In *State v. Foster*, the Ohio Supreme Court considered

whether Ohio's felony-sentencing structure violates the Sixth Amendment to the United States Constitution in the manner set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

*State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 1.   The court

determined that multiple felony sentencing statutes contained unconstitutional

provisions and severed the offending portions.[1]

{¶ 29} The court concluded:

> trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."

*Id.* at ¶ 98-99.

{¶ 30} The state argues that Delvallie's focus on *Blakley* and *Foster* is

misplaced because the imposition of the Reagan Tokes Law does not require judicial

fact-finding.   However, it has been explained that *Apprendi* stands for the

proposition that

> when a "sentencing factor" increases the maximum penalties the defendant is facing, then it is a "sentence enhancement" because it effectively operates as an element of a greater offense, and thus needs to be proven beyond a reasonable doubt.  [*Apprendi*,] 530 U.S. at 494, 120 S.Ct. 2348, 147 L.Ed.2d 435, [n. 19].  Furthermore, the Court made it clear that whether something is an "element" of an offense or a "sentencing factor," is a question not of its "label," but of its "effect" on

---

[1] After *Foster*, as to the consecutive sentence findings,

> [e]ffective September 30, 2011, the General Assembly enacted Am.Sub.H.B. No. 86, which "'simultaneously repeal[ed] and revive[d]'" the severed language in R.C. 2929.14(E)(4) and renumbered it as R.C. 2929.14(C)(4). [*State v.*] *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 21, quoting Section 11 of the bill. R.C. 2929.14(C)(4) is identical to former R.C. 2929.14(E)(4).   We recognized that with the repeal of former R.C. 2929.14(E)(4) and its revival in 2929.14(C)(4), we have "now come full circle on the question of whether a trial court must engage in judicial fact-finding prior to imposing consecutive sentences on an offender." *Bonnell* at ¶ 1.

*State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 36.

the defendant's sentence. [*Id.* at 494.] Even when a State labels a circumstance as a "sentencing factor," if the effect of that circumstance is "used to describe an increase beyond the maximum authorized statutory sentence," then it is the "functional equivalent of an element of a greater offense" that was not proved under the burden of the jury's guilty verdict for the crime with which the defendant is charged. [*Id.* at 494, n. 19.]

*Amber G. Damiani, Nix The "Fix":  An Analysis On Ohio's Criminal Sentencing Law And Its Effect On Prison Population, Capital University Law Review.* Vol. 758, 47:755 (2019) (hereinafter referred to as "Nix the Fix").

{¶ 31}  The author of *Nix the Fix* offers that

Had the Ohio Supreme Court given a closer analysis of *Apprendi* and its progeny, it would have seen two things: (1) the Sixth Amendment's concern is not whether judicial fact-finding occurs, but whether the facts the judge is using were first authorized by the jury within the limits set by the legislature; and (2) whether a judge has limited or unlimited discretion is not determinative of whether a sentencing system will comport with the Sixth Amendment.

*Nix the Fix* at p. 779, citing *Blakely*, 542 U.S. at 308-309, 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

{¶ 32}  We agree that the Reagan Tokes Law violates the Sixth Amendment right to trial by jury.  The United States Supreme Court has made clear that a Sixth Amendment violation occurs when the facts considered in enhancing the sentence have not been considered by the jury.

[T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury.

*Blakely* at 308.

**{¶ 33}** Under the Reagan Tokes Law, the role of the jury is, in fact, usurped not by the trial court or other branch of the judiciary, but by the ODRC based on conduct wholly unrelated to Delvallie's conviction. Thus, we segue to Delvallie's next challenge.

## 2. Separation of Powers

**{¶ 34}** Delvallie offers that the Reagan Tokes Law constitutes the legislative delegation of judicial powers to the executive branch of the government. The Ohio Supreme Court explained that

> "The people possessing all governmental power, adopted constitutions completely distributing it to appropriate departments." *Hale v. State*, 55 Ohio St. 210, 214, 45 N.E. 199, 200 (1896). They vested the legislative power of the state in the General Assembly (Section 1, Article II, Ohio Constitution), the executive power in the Governor (Section 5, Article III, Ohio Constitution), and the judicial power in the courts (Section 1, Article IV, Ohio Constitution). They also specified that "the general assembly shall [not] * * * exercise any judicial power, not herein expressly conferred." Section 32, Article II, Ohio Constitution.

*State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 462, 715 N.E.2d 1062 (1999).

**{¶ 35}** The court specified that

> courts "possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government." *State ex rel. Johnston v. Taulbee,* 66 Ohio St. 2d 417, 423 N.E.2d 80 (1981), paragraph two of the syllabus, approving and following S*tate ex rel. Foster v. Lucas Cty. Bd. of Commrs.*, 16 Ohio St.2d 89, 242 N.E.2d 884 (1968), paragraph two of the syllabus. "It is indisputable that it is a judicial function to hear and determine a controversy between adverse parties, to ascertain the facts, and, applying the law to the facts, to render a final judgment." *Fairview v. Giffee*, 73 Ohio St. 183, 190, 76 N.E. 865, 867 (1905).

*State v. Thompson*, 92 Ohio St.3d 584, 586, 752 N.E.2d 276 (2001).

{¶ 36} Delvallie relies on *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000), also cited in *State v. Oneal*, Hamilton C.P. No. B 1903562, 2019 WL 7670061 (Nov. 20, 2019), that determined that the Reagan Tokes Law violated the separation of powers and deprived the offender of procedural due process.

{¶ 37} *Bray* declared that former R.C. 2967.11 which allowed the parole board to punish a violation by extending the stated prison term was unconstitutional. The court explained:

> R.C. 2967.11(B) states: "As part of a prisoner's sentence, the parole board may punish a violation committed by the prisoner by extending the prisoner's stated prison term for a period of fifteen, thirty, sixty, or ninety days in accordance with this section. * * * If a prisoner's stated prison term is extended under this section, the time by which it is so extended shall be referred to as 'bad time.'" A "violation" is defined as "an act that is a criminal offense under the law of this state or the United States, whether or not a person is prosecuted for the commission of the offense." R.C. 2967.11(A). * * *
>
> In short, R.C. 2967.11(C), (D), and (E) enables the executive branch to prosecute an inmate for a crime, to determine whether a crime has been committed, and to impose a sentence for that crime. This is no less than the executive branch's acting as judge, prosecutor, and jury. R.C. 2967.11 intrudes well beyond the defined role of the executive branch as set forth in our Constitution.

*Id.* at 135.

{¶ 38} The court concluded,

> [p]rison discipline is an exercise of executive power and nothing in this opinion should be interpreted to suggest otherwise. However, trying, convicting, and sentencing inmates for crimes committed while in prison is not an exercise of executive power. Accordingly, we hold that

R.C. 2967.11 violates the doctrine of separation of powers and is therefore unconstitutional.

*Id.* at 136.

{¶ 39} Delvallie contends that both the former R.C. 2967.11 bad time provision addressed in *Bray* and the Reagan Tokes Law "provide for the executive branch prison system to tell an inmate that the sentence imposed by the judge is not enough and that the inmate will be serving a longer sentence as a result of an executive agency's determination." Appellant's brief, p. 9.

{¶ 40} The state counters that the bad time provision actually extended the term beyond that imposed by the sentencing court. In contrast, the state argues that the Reagan Tokes Law "provides that the sentencing court will have imposed the sentence with the maximum-term provision allowing the defendant to be kept beyond the presumptive minimum-term release date." Appellee's brief, p. 15.

{¶ 41} Thus, the state argues that appellant's reliance on *Bray* for the separation of powers analysis is misplaced, and that *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (2000), and *State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 647, 4 N.E. 81 (1885), govern here.

{¶ 42} *Woods* involved former R.C. 2967.28 and ODRC's management of postrelease control ("PRC") violations. The court determined the PRC statute was constitutional and did not violate the separation of powers or due process clauses of the federal and state constitutions.

{¶ 43} The sentencing scheme in effect at the time was implemented under Am.Sub.S.B. No. 2 ("SB 2"), and its companion bill, Am.Sub.S.B. No. 269 ("SB 269"), effective July 1, 1996. *Id.* at 507-508.

> One of the overriding goals of SB 2 was "truth in sentencing," meaning that the sentence imposed by the judge is the sentence that is served, unless altered by the judge. This was primarily accomplished by two methods: eliminating indefinite sentences and eliminating parole.
>
> Pre-SB 2, an offender rarely served the time actually sentenced for three main reasons. First, indefinite sentences were prescribed for most serious felonies. Second, upon entering a state correctional institution, an offender's sentence was "automatically" reduced by thirty percent for good behavior. Former R.C. 2967.19, 145 Ohio Laws, Part IV, 6437. Finally, the Ohio Parole Board ("APA" herein) reviewed all prison sentences for disparity among offenders and attempted to abate inequities. Former R.C. 2967.03, 145 Ohio Laws, Part IV, 6428.

*Id.* at 508.

> {¶ 44} SB 2 required,
>
> a period of post-release control * * * for all offenders who are imprisoned for first- or second-degree felonies, felony sex offenses, or a third-degree felony, not a felony sex offense, in which the offender caused or threatened to cause physical harm to a person. R.C. 2967.28(B). Further, post-release control is authorized for those imprisoned for other felonies at the discretion of the Parole Board. R.C. 2967.28(C).

*Id.* "The Parole Board has significant discretion to impose conditions of release designed to protect the public and to promote the releasee's successful reintegration into the community. Ohio Adm.Code 5120:1-1-17(A)." *Id.*

{¶ 45} *Woods* distinguished PRC from bad time on the ground that PRC is part of the "original judicially imposed sentence." *Id.* at 512. The court explained that PRC "sanctions are sanctions aimed at behavior modification in the attempt to

reintegrate the offender safely into the community, not mere punishment for an additional crime, as in bad time." *Id.*

{¶ 46} PRC is not based on behavior that took place during the offender's incarceration as with *Bray* and under the Reagan Tokes Law. We do not find that Delvallie's reliance on *Bray* is misplaced. In *Bray*, the appellant prisoners were sentenced to additional terms of incarceration for acts committed in prison during their term of incarceration under former R.C. 2967.11. Under the Reagan Tokes Law, a defendant is sentenced to a "minimum prison term" that the court may choose from the listed term choices in the statute. R.C. 2967.271(A)(1). An offender is also sentenced to a "maximum term" of an additional fifty percent of the minimum term pursuant to R.C. 2929.144. R.C. 2929.14(A). However, serving the maximum term is specifically conditioned on the offender's acts committed during the incarceration and is at the full discretion of the ODRC.

{¶ 47} The minimum term is the presumptive release date or, where the offender earns an early release approval, that date will become the presumptive release date. R.C. 2967.271(B). An offender may receive early release that shall be for five to fifteen percent of the offender's minimum term "determined in accordance with rules adopted by the department under division (F)(7) of this section." R.C. 2967.271(F)(1)(b). Early release is labeled the "[o]ffender's presumptive earned early release date." R.C. 2967.271(A)(2).

{¶ 48} The ODRC develops the rules for what is required for a reduction recommendation, including offense levels. ODRC assembles supporting

information and makes a recommendation to the sentencing court to receive approval for early release. A court hearing is conducted, and the prosecutor and victim, if any, may present information. Documents and reports may also be submitted. If the court determines that the early release presumption has not been rebutted by the presence of the cited factors, the reduction will be granted. The statute does not provide that, as a result of the hearing, the presumptive release date may be extended.

{¶ 49} The factors considered by the court for early release are:

(a) Regardless of the security level in which the offender is classified at the time of the hearing, during the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to, the infractions and violations specified in division (F)(4)(a) of this section, demonstrates that the offender continues to pose a threat to society.

(c) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

(d) During the offender's incarceration, the offender did not productively participate in a majority of the rehabilitative programs and activities recommended by the department for the offender, or the offender participated in a majority of such recommended programs or activities but did not successfully complete a reasonable number of the programs or activities in which the offender participated.

(e) After release, the offender will not be residing in a halfway house, reentry center, or community residential center licensed under division

(C) of section 2967.14 of the Revised Code and, after release, does not have any other place to reside at a fixed residence address.

R.C. 2967.271(F)(4)(a)-(e). The court also considers the relevant seriousness and recidivism factors in R.C. 2929.12(B) to (D).

{¶ 50} Under R.C. 2967.271(F)(5), the court must provide notice of approval or denial to the ODRC within 60 days. If the court denies the reduction, "[t]he court shall specify in the notification the reason or reasons for which it found that the presumption was rebutted and disapproved the recommended reduction." R.C. 2967.271(F)(5). The statute does not provide for notice to the offender, participation by the offender, submission of information by the offender, or appeal of the decision.

{¶ 51} The law provides that the ODRC "shall" release the offender on the presumptive release date unless ODRC unilaterally determines that the offender is guilty of committing one of the acts cited in R.C. 2967.271(B) during his or her incarceration. Clearly, this indicates that the presumptive minimum term is deemed to be punishment commensurate with the crime committed. The sentencing court, based on the facts underlying convictions authorized by the jury within the limits set forth by the legislature, imposed the presumed minimum date.

{¶ 52} The legislated incentive for good behavior is codified at R.C. 2971.271(F) where the court may reduce the presumptive minimum term based on factors similar to those employed by the ODRC to prevent an offender's release.

This leaves the conclusion that the maximum is a sanction for acts that violate rules and regulations of the institution or other illegal acts.

{¶ 53} R.C. 2967.271(C) governing the ODRC's rebuttal provides in part:

The department may rebut the presumption only if the department determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply: [R.C. 2967.271(F)(1)(a)].

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated. [R.C. 2967.271(F)(1)(a)].

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society. [R.C. 2967.271(F)(1)(b)].

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level. [R.C. 2967.271(F)(1)(a)].

R.C. 2967.271(C)(1)-(3).[2]

---

[2] The bracketed statutes are the generally corresponding paragraphs for the court's assessment of a minimum term reduction. The court does not assess R.C. 2967.271(C)(2). Additional factors considered by the court for a minimum term reduction are whether the offender participated in programs, and where the offender will be housed after release. R.C. 2967.271(F)(4)(d)-(e).

{¶ 54} Under R.C. 2967.271(D), the ODRC makes the rules, has unfettered discretion to determine what charges to initiate against the offender, investigates the charges, serves as adjudicator and factfinder and determines how far beyond the presumed release date, whether by minimum term or reduced term, the offender shall remain in prison. PRC applies as advised during sentencing. The ODRC will set a reconsideration date for release and this process may occur multiple times but may not exceed the maximum sentence.

{¶ 55} As stated in *Bray,* "[p]rison discipline is an exercise of executive power and nothing in this opinion should be interpreted to suggest otherwise." *Bray*, 89 Ohio St.3d at 136, 729 N.E.2d 359. "However, trying, convicting, and sentencing inmates for crimes committed while in prison is not an exercise of executive power." *Id.* "Accordingly, we hold that R.C. 2967.11 violates the doctrine of separation of powers and is therefore unconstitutional." *Id.* Imposition of the rather elaborate protocol under the Reagan Tokes Law does not alter the fact that the ODRC executive branch is "trying, convicting, and sentencing inmates for crimes committed while in prison." *Id.*

{¶ 56} "The reason the legislative, executive, and judicial powers are separate and balanced is to protect the people, not to protect the various branches of government." *Id.* at 135.

### 3. Due Process

{¶ 57} Delvallie asserts that the Reagan Tokes Law violates due process under the Fourteenth Amendment and Article I, Section 16 of the Ohio Constitution

by: (1) lack of notice due to vagueness, (2) inadequate parameters on executive branch discretion, and (3) inadequate guarantees for a fair hearing. We examine his claims.

{¶ 58} "The Due Process Clause has been interpreted to contain two components: substantive due process and procedural due process." *State v. Ward*, 130 Ohio App.3d 551, 557, 720 N.E.2d 603 (8th Dist.1999):

> "Procedural due process" ensures that a state will not deprive a person of life, liberty, or property unless fair procedures are used in making that decision, *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). "Substantive due process" guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision. *Eastlake v. Forest City Ents., Inc.*, 426 U.S. 668, 676, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976).

*Id.*

{¶ 59} To elaborate,

> Procedural due process is a "guarantee of fair procedure." Procedural due process guarantees an affected individual the right to some form of hearing, with notice and an opportunity to be heard, before that individual is divested of a protected interest. *See Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The requirements of procedural due process are "flexible" and call for such procedural protections "as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976); *State v. Hamilton*, 75 Ohio St.3d 636, 639, 665 N.E.2d 669 (1996). The process due an individual varies according to the type of proceeding involved.

*Id.*

### 4. Notice and Vagueness

{¶ 60} Here Delvallie argues that the statute is void for vagueness on its face because it does not provide adequate notice of what conduct will extend the

presumed release date at the behest of the ODRC. Specifically referenced by Delvallie are the provisions of R.C. 2967.271(C).

{¶ 61} Delvallie explains that:

Basic to any penal enactment is the requirement that it be sufficiently clear in defining the activity proscribed, and that it contain "ascertainable standards of guilt." *Winters v. New York,* 333 U.S. 507, 515 [68 S.Ct 665, 92 L.Ed. 840 (1948)].

The purpose of such a requirement is, as stated in *Connally v. General Constr. Co.,* 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322 (1926)], "* * * to inform those who are subject to it what conduct on their part will render them liable to its penalties * * *. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. * * *"

*Columbus v. Thompson,* 25 Ohio St.2d 26, 30, 266 N.E.2d 571 (1971).

{¶ 62} Also,

In *Connally*, at p. 329, the Supreme Court cited with approval the decision in *United States v. Capital Traction Co.,* 34 App. D.C. 592 [1910 U.S. App. LEXIS 5856], in the course of which opinion the appellate court said:

"* * * The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him [or her] to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another."

*Id.* at 30-31.

{¶ 63} Proponents of due process notice compliance under the Reagan Tokes Law argue that the rules set forth in the Ohio Administrative Code provide for satisfactory notice. *See State v. Simmons*, 8th Dist. Cuyahoga No. 109476, 2021-Ohio-939, *State v. Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578.

{¶ 64} The Ohio Supreme Court has determined that a void for vagueness challenge requires a tripartite analysis to address three pivotal values. *State v. Collier*, 62 Ohio St.3d 267, 269-270, 581 N.E.2d 552 (1991), citing *Papachristou v. Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Grayned v. Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

{¶ 65} The first value is to "'provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute.'" *Collier*, quoting *State v. Tanner*, 15 Ohio St.3d 1, 3, 472 N.E.2d 689 (1984). The second value is to "'preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints.'" *Id.*, quoting *id.* The third value is "'to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited.'" *Id.*, quoting *id.* "'Proper constitutional analysis necessitates a review of each of these rationales with respect to the challenged statutory language.'" *Id.*, quoting *id.*

{¶ 66} Delvallie complains that portions of R.C. 2967.271(C)(1)-(3) that list what acts will effectively extend the presumed minimum term of incarceration at the sole discretion of the ODRC are unclear:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

R.C. 2967.271(C)(1)-(3).

{¶ 67} Delvallie also provides examples.

[Delvallie may commit an infraction] by committing any violation of law which indicates a lack of rehabilitation. This is too vague. If, for example, he argues verbally with a guard and thus slows the guard's progress in making a mid-day inmate count, has he hamper[ed] or impeded a public official in the performance of the public off1cial's lawful duties in violation of R.C. 2921.31? If he fails to clean up a spilled cup of coffee in the mess hall, thus creating a risk of physical harm to someone who might slip, has he engaged in disorderly conduct under R.C. 2917.11(A)(5)? If, in response to a written questionnaire during a therapy session, he writes that he is innocent of the crime and disagrees with the jury's verdict, has he falsified a government writing under R.C. 2913.42(A)(1), (B)(4)? And, how does he know that what he has done indicates a lack of rehabilitation, the second prong of subsection (A)(1), and a threat to society, as required by (A)(2)?

Appellant's brief, p. 12.

{¶ 68} Public media is replete with reports of attacks by inmates against inmates, inmates against corrections officers, and corrections officers against inmates. Does the statute advise, for example, that if attacked by a definite term inmate with nothing to lose, the offender best run like the wind because involvement in an altercation, assuming he survives, could cost him his release?

{¶ 69} We find that the first analytical value is established as the statute does not "'provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute.'" *Collier*, 62 Ohio St.3d at 269-270, 581 N.E.2d 552, quoting *Tanner*, 15 Ohio St.3d at 3, 472 N.E.2d 689. The second value is to "'preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints.'" *Id.*, quoting *id.* The ODRC has unfettered discretion to decide, based on the nebulous statutory guidance, whether the offender should remain imprisoned beyond the presumed release date to the maximum term. The third value is "'to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited.'" *Id.*, quoting *id.*

{¶ 70} It is indisputable that notice of prohibited conduct is pivotal to due process and should not be easily assumed:

> "[T]he first essential of due process of law" is the accused's right to fair notice of the proscribed conduct. *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *accord Johnson v. United States*, 135 S.Ct. 2551, 2556-2557, 192 L.Ed.2d 569 (2015) (explaining that Due Process Clause prohibits state from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or

so standardless that it invites arbitrary enforcement"); *Rogers v. Tennessee*, 532 U.S. 451, 459, 121 S.Ct. 1693, 1698, 149 L.Ed.2d 697 (2001) (defining "core due process concepts" as "notice, foreseeability, and, in particular, the right to fair warning"); *Chicago v. Morales*, 527 U.S. 41, 56, 119 S.Ct. 1849, 1859, 144 L.Ed.2d 67 (1999) (stating that "the purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law"); *Rose v. Locke*, 423 U.S. 48, 49-50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975) ("All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden."); *Parker v. Levy*, 417 U.S. 733, 756-757, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974), quoting *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32-33, 83 S.Ct. 594, 597, 9 L.Ed.2d 561 (1963) ("'criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.'"); *Grayned v. Rockford*, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ("because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly"); *Bouie v. Columbia*, 378 U.S. 347, 351, 84 S.Ct. 1697, 1701, 12 L.Ed.2d 894 (1964), quoting *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811-812, 98 L.Ed. 989 (1954) ("'The * * * principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'"); *Screws v. United States*, 325 U.S. 91, 103-104, 65 S.Ct. 1031, 1036, 89 L.Ed. 1495 (1945) (explaining that due process requires statutes to be written so as to provide individual with "fair warning that his conduct is within [statute's] prohibition"); *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931) (stating that "[a]lthough it is not likely a criminal will carefully consider the text of the law before" committing a crime "it is reasonable that a fair warning should be given * * * in language that the common world will understand, of what the law intends to do if a certain line is passed"); *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926) ("a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."); *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, ¶23 (stating that due process requires law to be written so that the "public" can "adequately inform itself * * * before acting"); *State v. Tanner*, 15 Ohio St.3d 1, 3, 472 N.E.2d 689 (1984), quoting *Columbus v. Thompson*, 25 Ohio St.2d 26, 30, 266 N.E.2d 571 (1971), quoting

*United States v. Capital Traction Co.*, 34 D.C.App. 592 (1910), and citing *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926) ("'"[t]he crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue.'"").

*State v. Wheatley*, 2018-Ohio-464, 94 N.E.3d 578, ¶ 33 (4th Dist.).

{¶ 71} Where "factors other than those enumerated in the statute can be considered," the statute is void for vagueness. *Cleveland v. Mathis*, 136 Ohio App.3d 41, 45, 735 N.E.2d 949 (8th Dist.1999), citing *Ohio Dept. of Liquor Control v. Sons of Italy Lodge 0917*, 65 Ohio St.3d 532, 534-535, 605 N.E.2d 368 (1992).

{¶ 72} Delvallie has overcome the presumption of validity beyond a reasonable doubt because the Law and the constitution are clearly incompatible. *In re Special Docket No. 73958*, 8th Dist. Cuyahoga Nos. 87777 and 87816, 2008-Ohio-4444, at ¶ 12.

### 5. Inadequate Parameters on Executive Branch Discretion

{¶ 73} The broad scope of the ODRC's discretion is described throughout this opinion. Effectively a subset of Delvallie's void for vagueness argument, Delvallie calls additional attention to R.C. 2967.271(C)(2)-(3) which make the ODRC's decision on the stated issues virtually unreviewable:

> (2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

> (3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

{¶ 74} Delvallie explains:

> "The classification of prisoners and their placement are administrative functions which are due great deference. *Bell v. Wolish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). This court will not interfere with prison officials' decision on where an inmate is placed within the institution.
>
> Furthermore, [a prison's] decision to change [a prisoner's] security status while not changing his cell assignment is one involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds v. State*, 14 Ohio St.3d 68, 70, 14 OBR 506, 508, 471 N.E.2d 776, 778 (1984). No liability can attach to a decision involving a high degree of official discretion."

Appellant's brief, p. 12-13, quoting *Williams v. Ohio Dept. of Rehab. & Corr.*, 67 Ohio Misc.2d 1, 3, 643 N.E.2d 1182 (Ct. of Cl.1993).

{¶ 75} This example further supports this court's finding that the statute is void for vagueness.

### 6. Inadequate Guarantees for A Fair Hearing

{¶ 76} While Delvallie's argument regarding void for vagueness notice involved substantive due process, Delvallie's challenge here is to procedural due process under the Sixth Amendment and Article I, Section 10 of the Ohio Constitution. *Ward*, 130 Ohio App.3d at 557, 720 N.E.2d 603.

{¶ 77} In addition to *Apprendi's* holding that punishment may not be imposed based on facts that the jury did not find as part of the conviction, the procedures employed by ODRC are not designed to afford the constitutional right to trial by jury, Delvallie states the procedure lacks:

> The presumption of innocence and the requirement that proof by the prosecution rises to the level of proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 106, 825 L.Ed.2d 368 (1970);

The right to counsel and to the appointment of counsel if indigent. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

The right to confront Witnesses. *Crawford v. Washington*, 541 U.S. 36, 52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

The right to call Witnesses and require their presence via subpoena. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

The right to offer testimony. *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

Appellant's brief, p. 14.

{¶ 78} The majority in *State v. Cochran*, 5th Dist. Licking No. 2019 CA 00122, 2020-Ohio-5329, determined that the question of constitutionality of the Reagan Tokes Law was not ripe for adjudication. The dissent disagreed and offered an analysis. *Id.* at ¶ 25-93 (Gwinn, J., dissenting).

{¶ 79} The dissent observed that the language "there shall be a presumption that the person shall be released" [upon completion of the minimum term] and "'Unless the department rebuts the presumption, the offender shall be released,' within the Regan Tokes Law has arguably created enforceable liberty interests in parole." *Id.* at 46, quoting *Bd. of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). We respectfully disagree, however, that the dissent correctly determined that the Law is constitutional.

{¶ 80} The dissent acknowledged, and other proponents of the Law endorse, that the ODRC's disciplinary rules and procedures set forth the inmates' rules of conduct in the ODRC's regulations set forth in Ohio Adm.Code 5120. *See, e.g.*, Ohio

Adm.Code 5120-9-06.[3]  The Ohio Administrative Code sets forth various processes

and procedures but does not afford the due process protections cited by Delvallie.

This fact, coupled with the provision in Ohio Adm.Code 5120-9-08's provision that

the offender will receive notice that a hearing will be afforded, has been deemed

sufficient by some courts to meet due process requirements.

{¶ 81}  In fact, it has been held that ""prison disciplinary proceedings are not

part of a criminal prosecution, and the full panoply of rights due a defendant in such

proceedings does not apply.'" *Cochran* at ¶ 51, quoting *Wolff v. McDonnell,* 418 U.S.

539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (citations omitted).  Therefore, the

due process rights of offenders serving pursuant to the Reagan Tokes Law are

admittedly diluted though their liberty interest is directly impacted.

{¶ 82}  *Wolff* provided a list of modified due process rights for prisoners. The

court observed:

> "Prison disciplinary proceedings, on the other hand, take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so. Some are first offenders, *but many are recidivists who have repeatedly employed illegal and often very violent means to attain their ends.* They may have little regard for the safety of others or their property or for the rules designed to provide an orderly and reasonably safe prison life. Although there are very many varieties of prisons with different degrees of security, we must realize that in many of them the inmates are closely supervised, and their activities controlled around the clock. *Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace.*

---

[3] The rules are amended from time to time.  Prior effective dates for the cited code are listed as 04/05/1976, 10/30/1978, 08/18/1979, 08/29/1983, 06/03/1985, 01/14/1993, 07/18/1997, 07/19/2004, and 05/23/2014.  They were not amended upon imposition of the Reagan Tokes Law.

> *Relationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner.*"

(Emphasis added.) *Cochran* at *id.*, quoting *Wolff* at 561-562. This explanation is problematic where the presumed minimum sentence under the Reagan Tokes Law is deemed to be sufficient penance for the act, but that term may be extended by the ODRC without the due process protections.

{¶ 83} The court continued:

"[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S. Ct. 1874, 104 L.Ed.2d 459 (1989)]. As the *Martinez* Court acknowledged, "the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." *Id.* at 404-405.

*Cochran* at *id.*, quoting *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

{¶ 84} Thus, the court recognized that "'it is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society * * * to the very different situation presented by a disciplinary proceeding in a state prison.'" *Cochran* at *id.*, quoting, *Wolff,* 418 U.S. at 560, 94 S.Ct. 2963, 41 L.Ed.2d 935. Yet, under R.C. 2967.271, an offender's presumptive release, his liberty interest, will be unilaterally determined by the ODRC based on an alleged failure to comply with rules and procedures that are uniquely promulgated for the prison environment. And, the conduct is construed to indicate that the offender poses a

threat in a wholly different environment comprised of free citizens in an open society. *Cochran* at *id.*

**{¶ 85}** The administration and operation of the prison system "'are peculiarly within the province of the legislative and executive branches * * * and separation of powers concerns counsel a policy of judicial restraint.'" *Cochran* at *id.*, quoting *Turner*, 482 U.S. at 84-85, 107 S.Ct. 2254, 96 L.Ed.2d 64.

**{¶ 86}** Thus, Delvallie's due process rights are violated in spite of a constitutional liberty interest because he is incarcerated.

## V. Conclusion

**{¶ 87}** The legislature was faced with a daunting task in formulating this Law. The murder of Ms. Tokes, the namesake of the Reagan Tokes Law, was a heinous, reprehensible act that truly shocks the conscience. According to reports, the assailant had a history of juvenile criminal activity that included raping minor children and threatening his mother with a knife. He subsequently raped a pregnant mother in front of her toddler son. The victim refused to testify after the assailant warned her that he would have one of his gang associates take revenge. He was sentenced to six years for attempted rape and robbery, to run concurrently.

**{¶ 88}** The assailant committed 52 rule infractions during incarceration and was transferred to five different prisons but was released at the end of his sentence in November 2016, and was subject to state supervision. A convicted sex offender, he was fitted with a tracking bracelet as part of an ex-offender program. His whereabouts were not actively monitored, he did not check in with his parole officer

and was not followed by his parole officer. He committed at least six robberies between January 24, and February 7, 2018. One robbery involved a knife and two involved guns. Parole was not revoked after the third violation on February 1, 2017, though a parole hearing was set for February 23, 2017. He murdered Ms. Tokes on February 8, 2017.

{¶ 89} The system clearly failed. Had the assailant been convicted and sentenced under the current law, the ODRC would arguably have extended his term due to the multiple infractions. However, he would still have been released at the end of the term and subject to state supervision. Hence, the Reagan Tokes Law also includes provisions to enhance GPS monitoring and parole officer workloads.

{¶ 90} Legislation and protocols to address the release of incarcerated individuals who are deemed to pose a danger to the public is clearly imperative. Though well-intentioned, the measures must be crafted within the constitutional boundaries and executed by the appropriate branch of government.

{¶ 91} The sentence is vacated. The case is remanded for resentencing pursuant to our findings herein.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EMANUELLA D. GROVES, J., CONCUR